IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

-----------------------------------------------X

GARNELL BAILEY,                          :

       Plaintiff,                    :          No. 02-CV-4683

       V.                            :          JURY TRIAL DEMANDED

LUCENT TECHNOLOGIES INC.                 :
and AGERE SYSTEMS INC.,                             JUDGE JAMES KNOLL GARDNER
                                         :
       Defendants.                   :

-----------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW  IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff Garnell Bailey, by and through her attorney, GLENNIS L. CLARK, ESQUIRE, and hereby files Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,


GLENNIS L. CLARK
I. D. No. 36682
Attorney for Plaintiff
LAW OFFICE OF GLENNIS L. CLARK
532 Walnut Street
Allentown, PA 18101

(610) 433-6624

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. ...........................................................................................ii

ARGUMENT

    I. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF
      EMPLOYMENT DISCRIMINATION AND HARASSMENT
      (COUNT I). ....................................................................................................1

    II. SUMMARY JUDGMENT IS INAPPROPRIATE WHERE THE
      PLAINTIFF HAS PRODUCED EVIDENCE THAT
      REASONABLY SUPPORTS THE INFERENCE THAT
      DEFENDANT'S ALLEGED NON-DISCRIMINATORY
      REASONS FOR FIRING PLAINTIFF WERE MERELY PRETEXT
      (COUNT I). ....................................................................................................5

        A.    <u>Plaintiff Has Presented Evidence Sufficient to Rebut
               Defendants' Proffered Reasons For Her Disparate
               Treatment In the Workplace.</u> ..........................................................7

        B.    <u>Plaintiff Has Refuted Defendants' Evidence That She Was
               Fired Because She Threatened Kevin Pennington.</u> ........................11

        C.    <u>Plaintiff Has Produced Direct Evidence To Support An
               Inference That She Was Discriminated Against On The Basis
               Of Her Race And Gender.</u> ..............................................................18

    III. SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF RETALIATION
      IS INAPPROPRIATE (COUNT I). ..............................................................20

    IV. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF
      EMPLOYMENT DISCRIMINATION UNDER THE AMERICANS
      WITH DISABILITIES ACT (COUNT II). ....................................................23

CONCLUSION. ...................................................................................28

# TABLE OF AUTHORITIES

**Statutes**

29 U.S.C. § 206 (d) (1). ................................................................................9

42 U.S.C. § 12101. ...................................................................................23

**Cases**

Antol v. Perry, 82 F.3d 1291 (3rd Cir. 1996). ...................................................28

Ballard v. Healthsouth Corp., 147 F.Supp.2d 529
    (N.D. Texas, Dallas Div. 2001). ......................................................26, 27

Barber v. CSX Distrib. Servs., 68 F.3d 694 (3rd Cir. 1995). ..............................20

Brame v. Laborers' Dist. Council Health & Welfare Fund, 1989 U.S. Dist.
    LEXIS 9653, *1 (E.D.Pa. 1989). ............................................................22

Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326 (3rd Cir. 1995). .............8, 19, 20

Corning Glass Works v. Brennan, 417 U.S. 188 (1974). ..................................9, 10

Davis v. City of Philadelphia Water Dep't, 57 Fed. Appx. 90, 2003 U.S. App.
    LEXIS 1760, *1 (3rd Cir. 2003). ...........................................................11

Deane v. Pocono Med. Ctr., 142 F.3d 138 (3rd Cir. 1998). ..............................23

Dose v. Buena Vista Univ., 229 F.Supp.2d 910 (N.D. Iowa 2002). .....................12

Eckel Indus. v. Primary Bank, 26 F.Supp.2d 313 (D.C.N.H. 1998). .....................1

Gonzalez v. National R. Passenger Corp., 1989 U.S. Dist. LEXIS 11108,
    *1 (E.D.Pa. 1989). ..............................................................................15

Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313 (3rd Cir. 2000). .........1, 5

Greet v. Zagrocki, 1996 U.S. Dist. LEXIS 18635, *1 (E.D.Pa. 1996). ............12, 26

Healy v. New York Life Ins. Co., 860 F.2d 1209, 1220 (3rd Cir. 1988). ..........................17

Hugley v. Art Institute of Chicago, 3 F.Supp.2d 900 (N.D. Ill. 1998). ......................12, 13

Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). .....................26

Johnson v. Lehigh County, 11 Am. Disabilities Cas. (BNA) 263, 2000 U.S.
    Dist. LEXIS 12994, *1 (E.D.Pa. 2000). ....................................................23

Jones v. American Postal Workers Union Nat'l, 192 F.3d 417 (4th Cir. 1999). ...............11

Jones v. Sch. Dist. of Philadelphia, 19 F.Supp.2d 414, 418 (E.D.Pa. 1998). ............*passim*

Kachmar v. Sungard Data Systems, Inc., 109 F.2d 173 (3rd Cir. 1997). ..........................21

Krouse v. American Sterilizer Co., 126 F.3d 494 (3rd Cir. 1997). .....................................21

Miller v. Beneficial Management Corp., 977 F.2d 834, 846 (3rd Cir. 1992). ......................8

National Union Fire Ins. Co. v. Airborne Freight Corp., 2000 Dist. LEXIS 12773
    (S.D.N.Y. 2000). ....................................................................................1

Pentasuglio v. Hartford Ins. Group, 2001 U.S. Dist. LEXIS 13802, *1,
    (M.D.Pa. 2001). ....................................................................................28

Phillips v. Union Pac. R.R., 216 F.3d 703 (8th Cir. 2000). ......................................4, 11

Reddit v. Mississippi Extended Care Centers, Inc., 718 F.2d 1381 (5th Cir. 1983). ...........4

Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, 142 (2000). ........................5, 6

Riffle v. Sports Auth., Inc., 1999 U.S. Dist. LEXIS 14588, *1,
    80 Fair Empl. Prac. Cas. (BNA) 897 (S.D.Md. 1999). ...........................................1

Ryan v. General Mach. Prods., 2003 U.S. Dist. LEXIS 14755, *1 (E.D.Pa. 2003). .....8, 10

Shaner v. Synthes (USA), 8 Am. Disabilities Cas. (BNA) 1680, 1998 U.S. Dist.
    LEXIS 20009 (E.D.Pa. 1998). ..................................................................21

Shultz v. Wheaton Glass Co., 421 F.2d 259 (3rd Cir. 1970), cert. denied sub nom.
Wheaton Glass Co. v. Shultz, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). ..........8

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). ..........................................18

Tedeschi v. Sysco Foods of Philadelphia, Inc., 11 Am. Disabilities Cas. (BNA)
        263. 2000 U.S. Dist. LEXIS 12994, *1 (E.D.Pa. 2000). .........................23, 24, 25

Turner v. Schering-Plough Corp., 901 F.2d 335 (3rd Cir. 1990). .......................................6

**ARGUMENT**

I. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF
   EMPLOYMENT DISCRIMINATION AND HARASSMENT
   (COUNT I)

"Summary judgment is an exercise of issue finding, not issue determination."

National Union Fire Ins. Co. v. Airborne Freight Corp., 2000 Dist. LEXIS 12773

(S.D.N.Y. 2000).  See also Riffle v. Sports Auth., Inc., 80 Fair Empl. Prac. Cas. (BNA)

897, __, 1999 U.S. Dist. LEXIS 14588, *1, *4,(S.D.Md. 1999) (same); Eckel Indus. v.

Primary Bank, 26 F. Supp. 2d 313, 315 (D.C.N.H. 1998).  Thus, when deciding

Defendants' motion for summary judgment, this Court should "rea[d] the evidence in the

light most favorable to plaintiff" to "afford [her] the benefit of the doubt."  Jones v. Sch.

Dist. of Philadelphia, 19 F.Supp.2d 414, 419 (E.D.Pa. 1998) (emphasis supplied).

To establish a *prima facie* case of employment discrimination under Title VII and

Section 1981, a plaintiff must show the following:

(1) that [s]he is a member of a protected class, and
(2) is qualified for the position but
(3) was either not hired or fired from that position
(4) under circumstances that give rise to an inference of unlawful
    discrimination such as might occur when the position is
    ultimately filled by a person not of the protected class.

Jones, supra, 19 F.Supp.2d at 418.

Here, it is uncontroverted that Dr. Bailey is a member of *two* protected classes, in

that she is an African-American woman.  See Goosby v. Johnson & Johnson Medical,

1

Inc., 228 F.3d 313, 318-19 (3rd Cir. 2000) (race and gender discrimination); Jones, supra, 19 F.Supp.2d at 418 (race discrimination).  Nor is there any dispute as to Dr. Bailey's qualifications for the position.  See Deposition of Kevin Pennington, dated Aug. 13, 2003 [hereinafter "Pennington Dep."] at pp. 70-71.

Rather, Defendants claim that Dr. Bailey has failed to present evidence that she was treated unfairly, and ultimately fired, "under circumstances that give rise to an inference of unlawful discrimination." Jones, supra, 19 F.Supp.2d at 418.  See generally, Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Aug. 29, 2003 (hereinafter "Defendants' Memorandum"] at pp. 9-18. Defendants are wrong.

Plaintiff has presented evidence that, despite the fact that she was promoted to a director position in August 2000, see Pennington Dep. at p. 30; Deposition of Garnell Bailey, dated March 28, 2003 [hereinafter "Bailey Dep."] at p. 37, Defendants did not increase her stock options to even the minimum amount required under their own stated guidelines for persons filling director positions.  See Pennington Dep. at p. 87; Bailey Dep. at p. 71.  In addition, Plaintiff has established that other persons hired into a director position by Mr. Pennington were awarded a much higher salary than Plaintiff's, and offered greater stock options than Plaintiff – and all of them were white men.  See Bailey Dep. at pp. 61-63; Pennington Dep. at pp. 15, 21-22, 86-89.

Moreover, Plaintiff has proffered additional evidence of the systematically unfair treatment she received as a black woman at Agere:

(1) when her department was eliminated, she was not consulted and was deliberately shut out of the decision-making process that determined which of her employees would be retained by the company.  See Bailey Dep. at pp. 36, 66-67;

(2) Mr. Pennington gave authority for setting the budget for Dr. Bailey's department to Russell Diehl, a white man who was Dr. Bailey's *subordinate*.  See id. at p. 64;

(3) Mr. Pennington prepared an organizational chart, with the assistance of Russell Diehl, which informed the employees of the company that Dr. Bailey was a senior manager, rather than the director that she was.  See id. at pp. 112-13;

(4) Mr. Pennington allowed Dr. Bailey's employees to bypass her and deal directly with officers in the company without her input.  See id. at p. 63;

(5) Just following a presentation Dr. Bailey gave before a group of her customers, Mr. Pennington announced to them that "he didn't have the right people with the skills on the team." See id. at p. 64;

(6) When Dr. Bailey objected to Mr. Pennington's decision to remove her from the hiring and firing process with regard to Patricia Chila, Mr. Pennington responded that he had assumed that Dr. Bailey (a married woman, Bailey Dep. at p. 14) and Ms. Chila were both sleeping with the same man, Dewayne Rideout.  Id. at pp. 66-68, 112;

3

(7) Despite twenty years of service to the company, Dr. Bailey was fired without benefit of any severance package, whereas white men who stayed with the company for far shorter periods of time received generous severance packages. See Pennington Dep. at pp. 18-20.

In addition, Dr. Bailey has proffered evidence that Dewayne Rideout, who had become confrontational and behaved in a "very agitated, volatile" manner during at least one company meeting, Pennington Dep. at p. 73, Bailey dep. at pp. 279-83, and also threatened a vice-president at Agere by saying "I should go out in the parking lot and blow your head off," Bailey dep. at p. 281, was not terminated for this behavior, but was monitored by the company's security personnel, id. at pp. 282-83, and was ultimately awarded an $800,000 severance package when he left Agere. Id. at pp. 106-07. Compare Reddit v. Mississippi Extended Care Centers, Inc., 718 F.2d 1381, 1385-86 (5th Cir. 1983) (dismissal of black female plaintiff's discrimination case reversed where black female plaintiff presented evidence of pretext by showing that "white employees who engaged in conduct constituting cause for dismissal . . . only received warnings or disciplinary actions and "several blacks were terminated after their first infractions of the rules without receiving prior warnings") with Phillips v. Union Pac. R.R., 216 F.3d 703, 706 (8th Cir. 2000) (upholding district court's dismissal of race discrimination and retaliation claims on ground that plaintiff could not establish disparate treatment where co-worker's temper and use of profanity was not comparable to plaintiff's death threats).

4

Given the numerous disparities between Defendants' treatment of Plaintiff and their treatment of other employees who were not a member of her protected class (*i.e.*, a black female), a reasonable jury could certainly find that Plaintiff's termination only four months after she filed an EEOC complaint alleging race and gender discrimination was the final in a series of acts of discrimination and harassment that Defendants engaged in, for almost a year.  See Goosby, supra, 228 F.3d at 321.  See also Jones, supra, 19 F. Supp.2d at 419 (plaintiff may rely upon direct or circumstantial evidence to "establish the fourth element of the prima facie case by showing that non-members of the protected class were treated more favorably than he or she was").  Accordingly, Plaintiff has put forth sufficient evidence to support a *prima facie* case of gender and race discrimination, not to mention harassment.  See Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, 142 (2000); Jones, supra, 19 F. Supp.2d at 419.  See also Goosby, supra, 228 F.3d at 321 ("In an employment discrimination case a trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue.") (internal citation omitted).  Defendants' proffered evidence as to the *reasons* for Dr. Bailey's disparate treatment do not go to Plaintiff's *prima facie* case; rather, Defendants' proffer goes only to their allegedly legitimate, non-discriminatory reasons for taking adverse employment actions against Dr. Bailey, as discussed below.

II. SUMMARY JUDGMENT IS INAPPROPRIATE WHERE THE
    PLAINTIFF HAS PRODUCED EVIDENCE THAT
    REASONABLY SUPPORTS THE INFERENCE THAT DEFENDANT'S

ALLEGED NON-DISCRIMINATORY REASONS FOR FIRING
PLAINTIFF WERE MERELY PRETEXT (COUNT I)

To defeat summary judgment in an employment discrimination case, an employee
need only produce

> evidence of inconsistencies and implausibilities in the employer's
> proffered reasons for discharge [which] reasonably *could* support
> an inference that the employer did not act for nondiscriminatory
> reasons. . . . if the record contains evidence supportive of a rational
> inference that the employer's reasons are unworthy of credence,
> summary judgment for the employer is improper.

Turner v. Schering-Plough Corp., 901 F.2d 335, 342 (3rd Cir. 1990) (internal citations

omitted).  See also Reeves, supra, 530 U.S. at 147-48, 151-53 (jury may rely upon

evidence establishing plaintiff's *prima facie* age discrimination case, combined with

disbelief of the employer's alleged nondiscriminatory reasons for firing plaintiff, to find

that employer's purported reason for employment decision is pretextual).  Put another

way, to survive summary judgment, a plaintiff

> must point to some evidence, be it direct or circumstantial, from which
> a fact finder could reasonably either (1) disbelieve the employer's
> articulated legitimate reasons or, (2) believe that an invidious
> discriminatory reason was more likely than not a motivating or
> determinative cause of the employer's action.

Jones, supra, 19 F.Supp.2d at 418 (internal citations omitted).  Because Plaintiff has, in

fact, put forth such evidence, Defendants' motion for summary judgment must fail.  Id. at

418-19.

6

A.   Plaintiff Has Presented Evidence Sufficient to Rebut Defendants'
      Proffered Reasons For Her Disparate Treatment In the Workplace.

Defendants argue that, because Plaintiff was not yet a director, the stock options

and the salary she was provided were perfectly appropriate to her position as a senior

manager and did not reflect any disparate treatment of her.  See Defendants'

Memorandum at pp. 13-17.  However, Plaintiff has presented ample evidence for a jury to

disbelieve Defendants on this point.

First, Plaintiff's supervisor, Kevin Pennington, acknowledged that, according to

Agere's Human Resources documentation, Dr. Bailey *was* promoted to a director position

in August 2000.  See Pennington Dep. at pp. 89-90.  See also Bailey Dep. at pp. 99-100

and Bailey Exh. 8 (notice of promotion).  Additionally, Pennington instructed his

administrative assistant to make "a correction" to an organization chart of the company he

had prepared in which he had listed Dr. Bailey as a senior manager, rather than a director.

Pennington Dep. at pp. 91-93.  Moreover, Dr. Bailey testified as to the new

responsibilities she assumed once promoted to a director position:  supervising the "day-

to-day operations" on behalf of Mr. Rideout, Bailey Dep. at p. 88; terminating a senior

manager (which was Dr. Bailey's *previous* position) for performance deficiencies, id. at

p. 89; and preparing and signing evaluations of senior managers, id. at p. 90.

Given these inconsistencies, a jury might well conclude that, if Plaintiff bore these

supervisory responsibilities over senior managers, *they* must have been her subordinates

7

and *she* must have been promoted to a director position before Kevin Pennington joined

Agere.  With these facts in hand, a reasonable jury is free to disbelieve and reject

Defendants' assertion that the discrepancies between Dr. Bailey's salary and stock

options and those of other white, male directors were based on legitimate business

reasons.

_____Defendants also claim that Dr. Bailey was not entitled to be compensated similarly

to other directors in her department because she has made no showing that the work she

performed was sufficiently "similar" to that of the other directors.  Defendants'

Memorandum at p. 14.  Defendants, however, are misconstruing the standard by which

Plaintiff's job responsibilities should be compared to those of the other directors.

Analyzing the provisions of the Equal Pay Act,[1] the Third Circuit cautioned:

> *Congress in prescribing "equal" work did not require that the jobs be*
> *identical, but only that they must be substantially equal.*  Any other
> interpretation would destroy the remedial purposes of the Act.  The Act
> was intended as a broad charter of women's rights in the economic field.
> It sought to overcome the age-old belief in women's inferiority and to
> eliminate the depressing effects on living standards of reduced wages for
> female workers and the economic and social consequences which flow
> from it.

Shultz v. Wheaton Glass Co., 421 F.2d 259, 265 (3rd Cir.1970) (emphasis supplied), cert.

denied sub nom. Wheaton Glass Co. v. Shultz, 398 U.S. 905, 90 S. Ct. 1696; 26 L. Ed. 2d

---

[1] Because a violation of the Equal Pay Act constitutes a violation of Title VII, "a
*prima facie* showing of an EPA claim is also a *prima facie* showing of a Title VII
violation.  Miller v. Beneficial Management Corp., 977 F.2d 834, 846 (3rd Cir. 1992);
Ryan v. General Mach. Prods., 2003 U.S. Dist. LEXIS 14755, *1, *21 n.7 (E.D.Pa. 2003).

64 (1970). In adopting the EPA's definition of "equal work" as "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," 29 U.S.C. § 206 (d) (1), Congress explicitly noted that the job classification systems created by most companies already utilize these factors to evaluate their employees' abilities and determine their appropriate positions within the company. Corning Glass Works v. Brennan, 417 U.S. 188, 199-202 (1974). Thus, the very fact that Plaintiff was made a director in the Human Resources Department is *prima facie* evidence that Defendants considered her position equal -- in terms of "skill, effort, responsibility and working conditions" – to those of other directors in the same department. See id. at 202-03.

Moreover, nothing in Defendants' guidelines for compensating directors identifies Plaintiff's position as requiring less compensation as compared to other directors in the department or the company at large. See Pennington Exhs. 4 (stock option guidelines) and 8 (salary structure). Additionally, while Defendants note that Mr. Dumas (who began his employ at Agere as a director, Pennington Dep. at p. 14) "oversaw all human resources operations," Mr. O'Donnell managed "all of Agere's benefit programs," Mr. Henrici oversaw "all payroll and human resource information services functions," and Mr. Diehl "handled all budget and planning matters for the Human Resources department," Defendants' Memorandum at p. 15, Plaintiff's evidence has established that *she* oversaw all of the "learning and organization development" functions for Agere prior

9

to Mr. Pennington's reorganization of the company.  <u>See</u> Bailey Dep. at p. 86.  In short, there is simply no evidence to support Defendants' assertion that Dr. Bailey was entitled to less compensation than other directors in the Human Resources department.

In essence, Defendants are asking this Court to "differentiate between jobs which the company itself has always equated." <u>Corning Glass Works</u>, <u>supra</u>, 417 U.S. at 203. However, because Plaintiff's evidence suffices to establish a *prima facie* violation of the EPA (and Title VII), the burden of persuasion rests with Defendants to prove that Plaintiff's position should *not* be deemed equivalent to those of other directors in the Human Resources department.  <u>Id</u>. at 204.  <u>See also</u> <u>Ryan v. General Mach. Prods.</u>, 2003 U.S. Dist. LEXIS 14755, *1, *24-25 (E.D.Pa. 2003) (proof that plaintiff's job was not equal to those with which she compared herself was part of employer's "affirmative defense" that pay differential was "based on any factor other than sex").  For the foregoing reasons, Defendants have utterly failed to meet that burden.

Finally, nothing in the record supports Defendants' claim that Mr. Pennington "never had the opportunity" to equalize Dr. Bailey's compensation in comparison to the new directors he had hired.  <u>See</u> Defendants' Memorandum at p. 16.  Once Mr. Pennington had hired other directors at substantially higher rates of pay and with greater stock options than Plaintiff – and with no legally cognizable basis for maintaining that differential –  Defendants were in violation of the EPA, and "the company could not cure

its violation except by equalizing the base wages of [Plaintiff] with the higher rates paid

the [other directors.]" <u>Corning Glass Works</u>, <u>supra</u>, 417 U.S. at 206.

   B. <u>Plaintiff Has Refuted Defendants' Evidence That She Was</u>
     <u>Fired Because She Threatened Kevin Pennington</u>.

 Defendants are correct when they note that employee misconduct involving

violence may be a legitimate basis for terminating an employee. <u>See</u> Defendants'

Memorandum at p.10. Here, there is no misconduct involving violence by Dr. Bailer.

Further, Defendants' citations do not support their conclusion that "venting" one's anger

toward a supervisor, in the context of a confidential therapeutic relationship, constitutes

such misconduct. For example, in <u>Davis</u>, the employee was terminated "for uttering

racially charged obscenities at a supervisor *and* for making death threats against that

supervisor and another." <u>Davis v. City of Philadelphia Water Dep't</u>, 57 Fed. Appx. 90,

92, 2003 U.S. App. LEXIS 1760, *1, *4 (3rd Cir. 2003) (emphasis supplied). In that case,

unlike here, the employee's inappropriate remarks were directed *at* his supervisor -- not to

a mental health care professional for the purpose of defusing the employee's frustration.

Additionally, in <u>Davis</u>, the employee was discharged *after* having been warned about his

abusive behavior and suspended for thirty days. No such warning was given here.

 Similarly, in <u>Phillips</u>, <u>supra</u>, 216 F.3d at 705, the employee's threats were not

made within the context of a protected therapeutic relationship. Moreover, the employee

had a known history of "substance abuse and psychological problems" and was *known* to

carry a gun.  Id.  In fact, in *none* of the cases upon which Defendants rely did the

employee make the "threatening statements" within the context of a therapeutic

relationship she reasonably expected to remain confidential.  See also Jones v. American

Postal Workers Union Nat'l, 192 F.3d 417, 420 (4th Cir. 1999) (employee communicated

his intent to kill his supervisor to his superior); Dose v. Buena Vista Univ., 229 F.

Supp.2d 910, 915-16 (N.D. Iowa 2002) (employee made threatening statement while

discussing his disability check with member of human resources department and with

work-study student present); Hugley v. Art Institute of Chicago, 3 F. Supp.2d 900, 902

(N.D. Ill. 1998) (employee threatened co-worker during confrontation).

　　　　By contrast, here, Defendants concede that the statements at issue – if made at all –

were made to Plaintiff's therapist and to Defendants' Employee Assistance Program

Manager in the course of treating Plaintiff's depression.  Unquestionably, those

statements constitute confidential communications that were protected by a therapeutic

confidentiality privilege.[2]  See Greet v. Zagrocki, 1996 U.S. Dist. LEXIS 18635, *1, *4-5

(E.D.Pa. 1996).  See also Deposition of Susan Lovegrove-Geise, dated Aug. 12, 2001

[hereinafter "Lovegrove-Geise Dep."] at p. 7.  Defendants, however, contend that

Plaintiff's therapist and EAP counselor had a duty to warn Kevin Pennington of those

statements.  See Defendants' Memorandum at pp. 6-7.  In the alternative, Defendants

--------

　　　　[2] These communications were also protected under the Americans With
Disabilities Act.  See Point IV, infra.

argue that it is irrelevant whether the therapist or EAP Manager "reacted appropriately to Bailey's threats – or even whether Bailey was threatening Pennington at all," so long as Mr. Pennington actually fired Dr. Bailey on the basis of those threats, and not due to race and gender discrimination.  Id. at p. 12.  However, because Plaintiff has presented evidence that Defendants had no "good faith belief" that Plaintiff posed a credible threat to Mr. Pennington, a reasonable jury may conclude that the alleged threat was merely a pretext for firing Plaintiff on the basis of her race and gender.  See Hugley, supra, 3 F.Supp.2d at 906.  For this reason, Defendants' summary judgment motion should be denied.

According to Plaintiff's therapist, Patricia Gordy, the first time Plaintiff mentioned that she had purchased a gun was on August 21, 2001.  See Deposition of Patricia Gordy (dated Aug. 18, 2003) [hereinafter "Gordy Dep."] at p. 32.  See also Gordy Exh. 1 (Records of Patricia Gordy pertaining to Garnell Bailey), notes for Aug. 21, 2001.  Gordy testified that Dr. Bailey told her she had also bought one hundred bullets and "they have Kevin Pennington's name on them."  Gordy Dep. at p. 32.  As Dr. Bailey explained to Gordy, "[s]he felt so diminished by the treatment she received at work, that the gun was empowering her."  Gordy Exh. 1, notes for Aug. 21, 2001.  When Gordy informed Dr. Bailey that she had a duty to warn Pennington if Dr. Bailey intended to harm him, Dr. Bailey responded, "Pat, I don't have any intention to harm anyone."  Id. at pp. 32-33.

Nevertheless, with Dr. Bailey's permission, Gordy contacted Dr. Bailey's husband

13

to seek "reassurance" from him that the gun was "controlled/locked."  Gordy Exh. 1,

notes for Aug. 21, 2001 and Aug. 22, 2001.  See also Gordy Dep. at pp. 33-35.  In

addition, Gordy contacted Susan Lovegrove-Geise, Agere's Employee Assistance

Manager,[3] to inform her of the conversation with Dr. Bailey.  Id. at pp. 33-35.[4]  Once Dr.

Bailey's husband had advised Gordy that he did not believe Dr. Bailey was a threat to

anyone but that he would, nevertheless, keep the gun locked up, and Lovegrove-Geise

had told Gordy that she would meet with Dr. Bailey to discuss the issue of the gun, Gordy

made no further reports to anyone concerning the incident.  See id. at pp. 34-36.  See also

Gordy Exh. 1, notes for Aug. 21, 2001 and Aug. 22, 2001.

　　　In subsequent conversations with Gordy, the first on August 27, 2001, Dr. Bailey

continued to reassure Gordy that she had no intention of harming anyone.  Gordy Dep. at

p. 36.

　　　Then, on October 1st, according to Lovegrove-Geise, she had a telephone

conversation with Dr. Bailey in which Dr. Bailey "was venting about her feelings about

Kevin Pennington and indicated that she even bought a gun. . . . And when I asked her if

she could tell me that she would not harm him, she said that she could not tell me that."

---

[3] See Lovegrove-Geise Dep. at p. 6.

[4] Although Lovegrove-Geise denies receiving any such phone call from Gordy in
August 2001, see Lovegrove-Geise Dep. at pp. 23, 52-53, Gordy's patient notes record in
detail the substance of her August 21st and August 22nd conversations with Lovegrove-
Geise regarding Dr. Bailey's purchase of a gun.  See Gordy Exh. 1, notes for Aug. 21,
2001 and Aug. 22, 2001.

Lovegrove-Geise Dep. at p. 21. Believing that she had a duty to warn Mr. Pennington, Lovegrove-Geise did so, and also telephoned Gordy, on October 3rd, to inform Gordy that Dr. Bailey had made a threat and Lovegrove-Geise had "initiated an action" against Dr. Bailey at Agere. Gordy Dep. at pp. 38, 40; Lovegrove-Geise Dep. at p. 38.

Gordy met with Dr. Bailey on October 3rd. Gordy Dep. at p. 38. On that date, Dr. Bailey told Gordy that she "needed to ascertain proof that she had no intention to harm Kevin Pennington," and therefore, she had returned the gun to the store from which she had bought it. Id. at p. 40. Dr. Bailey had brought a copy of the receipt for the gun, indicating it had been returned to the store, to Gordy as evidence of her lack of intent to harm Mr. Pennington. Id. at p. 41. On the same date, Gordy contacted Susan Lovegrove-Geise and informed her that Dr. Bailey had returned the gun to the store. Id. at p. 60. Gordy was satisfied that Dr. Bailey, in fact, harbored no intent to harm Mr. Pennington, id., and "never saw an indication that she would actually harm somebody." Id. at p. 67.

Nevertheless, when Plaintiff was cleared by her doctors to return to work in December 2001, Mr. Pennington fired her, allegedly for threatening his life. Pennington Dep. at pp. 67-68.

Based on the evidence Plaintiff has already adduced, a reasonable jury could well find that, contrary to Pennington's testimony, see id., the decision to fire Plaintiff was *not*, in fact, based upon her alleged threat. First, as discussed above, see supra, pp. 9-10, a reasonable juror might well conclude that a "threat" uttered when Plaintiff was "venting"

15

in the course of a confidential therapeutic relationship provides no legitimate basis for

firing Plaintiff, because she had every right to believe that her angry words would never

be communicated to Kevin Pennington. Moreover, since this "threat" was never

communicated to Mr. Pennington directly, and Mr. Pennington was told the context in

which Plaintiff made this alleged threat, a jury might well find that Pennington had no

basis for taking it seriously. See Gonzalez v. National R. Passenger Corp., 1989 U.S.

Dist. LEXIS 11108, *1, *16-17 (E.D.Pa. 1989) (employer's summary judgment motion

on national origin discrimination claim denied where "a genuine issue of fact" existed as

to whether employer misinterpreted employee's words as a threat).

Mr. Pennington's own testimony supports the conclusion that Plaintiff's alleged

threat was not the reason he fired her. After all, as Mr. Pennington testified, he did learn,

prior to firing Plaintiff, that she had actually returned the gun to the store from which she

bought it. Pennington Dep. at p. 78. Mr. Pennington, however, testified that this

information had no bearing on his decision to terminate Dr. Bailey. Id. Similarly, Mr.

Pennington testified that he did not bother to inquire into whether any of Dr. Bailey's

health care providers *other* than Lovegrove-Geise viewed Dr. Bailey as a threat to his

physical safety. Id. In fact, they did not. See Gordy Dep. at p. 67; Deposition of Richard

Goy, M.D., dated July 29, 2003 [hereinafter "Goy Dep."], at pp. 28-29; Deposition of

Hugo N. Twaddle, M.D., dated July 29, 2003 [hereinafter "Twaddle Dep."], at pp. 20-22.

Given Plaintiff's previously "sterling reputation in the community," Gordy Dep. at p. 67,

16

a jury might well conclude that Mr. Pennington's disregard for the facts surrounding the alleged threat, as well as the absence of any significant investigation into the alleged threat, *see* Deposition of Anthony Patillo, dated Aug. 13, 2003, at p. 10, indicates that Mr. Pennington would have fired Plaintiff even if reports of the threat had turned out to be a complete hoax!

Moreover, a reasonable juror might well find that, contrary to Lovegrove-Geise's testimony, *see* supra, p. 12, n. 4, she *was* aware, as of August 21, 2001, that Plaintiff had told Gordy she had bought a gun and bullets with "Pennington's name on them." Gordy so testified and her notes reflect that, in the context of fulfilling her employer's policy, she had informed Lovegrove-Geise of that fact. Gordy Dep. at pp. 33-35; Gordy Exh. 1, notes of Aug. 21, 2001 and Aug. 22, 2001. Under these circumstances, the jury may easily conclude that, since Lovegrove-Geise saw no concern sufficient to warn Mr. Pennington in August 2001, there was certainly no basis for issuing such a warning in October 2001 – *after* any potential threat had been averted, and Plaintiff had denied any intent to harm Kevin Pennington. See Bailey Dep. at p. 138. Rather, the jury might well find that the warning was issued because Plaintiff had become a potential liability to the company (and Kevin Pennington) by filing an EEOC complaint and lodging objections to her unfair treatment with both John Dickson and Kevin Pennington. See Pennington Dep. at pp. 49-52.

Particularly in light of the ample evidence Plaintiff has presented as to the

17

disparate treatment she received at the hands of Defendants, see supra, Point I, it is

apparent that Plaintiff has "introduce[d] evidence that casts doubt on [her] employer's

contention that there was a legitimate business justification for letting [her] go." Healy v.

New York Life Ins. Co., 860 F.2d 1209, 1220 (3rd Cir. 1988).  Where, as here, "the

plaintiff has pointed to evidence sufficient to discredit the defendant's proffered reason,

to survive summary judgment the plaintiff need not also come forward with additional

evidence of discrimination." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331

(3rd Cir. 1995) (internal citation omitted).  See also St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the

defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,

together with the elements of the prima facie case, suffice to show intentional

discrimination").  Nevertheless, Plaintiff *has* proffered such additional evidence.

> C.    Plaintiff Has Produced Direct Evidence To Support An
>         Inference That She Was Discriminated Against On The Basis
>         Of Her Race And Gender.

In essence, Plaintiff has "argue[d] that [s]he was treated differently than white [and

male employees] in that while h[er] actions resulted in discipline or threats of discipline,

similar action was not taken against other[s]." Jones, supra, 19 F.Supp.2d at 419.  To

establish more fully her assertion that the *reasons* for this harassment and disparate

treatment were race and gender discrimination, Dr. Bailey testified that Mr. Pennington

accused her, absent any evidence, of conducting an improper sexual relationship with her

supervisor, Dewayne Rideout (a black man).  Bailey Dep. at pp. 66-68, 112.  The

implication was clear: Mr. Pennington believed that Dr. Bailey's decision to terminate

Patricia Chila was based on the fact that she was "competing" with Ms. Chila for Mr.

Rideout's amorous attentions.  Obviously, this assumption would not likely have been

made had Dr. Bailey been a man, or, quite possibly, had she been white, as Mr.

Pennington might not have leapt so quickly to the conclusion that a white woman would

be sexually interested in her black supervisor.  Evidence that Mr. Pennington curtailed Dr.

Bailey's professional authority to make decisions about Patricia Chila on the basis of this

assumption is particularly compelling proof of race and gender discrimination because it

establishes a causal link between the discrimination and the adverse employment actions

taken against Dr. Bailey.

In addition, Plaintiff has adduced evidence that there was a perception among

Agere's employees that Agere's management operated as an 'old boys' network.  <u>See</u>

Pennington Dep. at p.99 (noting this perception among Agere employees in company-

wide survey).  As the Third Circuit noted in <u>Brewer</u>, evidence of a "corporate culture" of

discrimination is "relevant evidence of discrimination," *even where* the decision maker

has no actual knowledge of the CEO's original statement cultivating that "culture of

discrimination."  <u>Brewer</u>, <u>supra</u>, 72 F.3d at 333-34.

Thus, Plaintiff has not only produced evidence sufficient for a jury to "disbelieve

the employer's articulated legitimate reasons" for its adverse employment actions against

her, see supra, Point II A and B, but has also proffered evidence sufficient for a jury to conclude "that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Jones, supra, 19 F.Supp.2d at 418 (internal citations omitted).

### III. SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF RETALIATION IS INAPPROPRIATE (COUNT I).

It is undisputed that Plaintiff filed two EEOC complaints against Defendants, on August 17, 2001 and on April 3, 2002, alleging employment discrimination against her on the basis of her race and gender and thereby engaging in an activity protected under Title VII.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3rd Cir. 1995).  Moreover, Plaintiff has asserted that, as a result of Defendants' retaliation against her for engaging in that protected activity, she has suffered adverse employment actions with regard to the conditions of her employment, including her compensation, and her ultimate termination. See generally, Plaintiff's Amended Complaint, ¶¶ 23-32 at pp. 6-8.

Defendants assert that there is no causal connection between the EEOC complaints Plaintiff filed and these adverse employment actions and, therefore, summary judgment for Defendants is appropriate.  Defendants' Memorandum at p. 24.  To so argue, Defendants conveniently ignore the evidence Plaintiff has presented (both through her own and others' testimony) to support a case of discriminatory retaliation.  Cf. Brewer, supra, 72 F.3d at 333-34.

First, the fact that Dr. Bailey was fired a mere four months after filing her first

EEOC complaint supports the conclusion that she was fired in retaliation for bringing suit

against the company.  See Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173 (3rd Cir.

1997) (passage of time between protected activity and adverse employment decisions is

probative of causation issue in retaliation claim); Shaner v. Synthes (USA), 8 Am.

Disabilities Cas. (BNA) 1680, ___, 1998 U.S. Dist. LEXIS 20009, *1, *14 (E.D.Pa. 1998)

("In a retaliatory discharge case, the causal connection element of the prima facie case

can be established when temporal proximity between the employee engaging in protected

activity and the alleged retaliatory conduct is 'unusually suggestive'"(quoting Krouse v.

American Sterilizer Co., 126 F.3d 494, 503 (3rd Cir. 1997)).

In addition, Plaintiff has alleged a continuous course of discriminatory conduct

that extended from her EEOC filings in August 2001 and April 2002 and intensified until

her termination in December 2001.  Dr. Bailey testified that her supervisor, Kevin

Pennington: repeatedly interfered with her authority as a director in the Human Resources

department; refused to raise her salary and stock options to a level that matched those of

white male directors in the same department and the company; and, only months after she

had both complained to his supervisor about this discriminatory treatment and filed her

first EEOC complaint, fired her on the pretext that she posed a credible threat to Mr.

Pennington's personal safety.  See supra, Point I and Point II.

21

In addition, the evidence that there was at Agere a perception that Agere's management operated as an 'old boys' network, see Pennington Dep. at p.99 (noting this perception among Agere employees in company-wide survey) would permit a reasonable jury to find that Plaintiff was harassed, then fired, for attempting to 'buck' that discriminatory system through her EEOC filings.  See Brewer, supra, 72 F.3d at 333-34 (evidence of a "corporate culture" of discrimination is "relevant evidence of discrimination," *even where* the decision maker has no actual knowledge of the CEO's original statement cultivating that "culture of discrimination").  So, too, Ms. Bailey's testimony that Mr. Pennington accused her, absent any evidence, of conducting an improper sexual relationship with her supervisor – *and then curtailed her professional responsibilities on that basis* – supports the reasonable inference that Defendants' reaction to Dr. Bailey's EEOC complaint was to retaliate by intensifying its gender and race-based discrimination against her.

Plainly, the plaintiff has proffered evidence sufficient to enable a reasonable jury to find that Defendants' proffered reasons for its adverse employment actions were merely a cover for retaliation in violation of Plaintiff's Title VII rights.  The factual disputes Plaintiff has raised require that this case be heard by a jury.  See Brame v. Laborers' Dist. Council Health & Welfare Fund, 1989 U.S. Dist. LEXIS 9653, *1, *10 (E.D.Pa. 1989).

IV. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF
    EMPLOYMENT DISCRIMINATION UNDER THE AMERICANS
    WITH DISABILITIES ACT (COUNT II).

To establish a *prima facie* case under the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101, a plaintiff must show that he or she:

   (1) has a 'disability'
   (2) is a 'qualified individual' and
   (3) has suffered an adverse employment action because of that disability.

Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3rd Cir. 1998).  In this case, Plaintiff's

illness was diagnosed as both depression and post-traumatic stress disorder.  See Gordy

Dep. at pp. 22, 26, 68-69, Goy Dep. at p. 15; Twaddle Dep. at p. 20.  These diagnoses fall

within the definition of "disability" as contemplated by the ADA.  Johnson v. Lehigh

County, 11 Am. Disabilities Cas. (BNA) 269, ___, 2000 U.S. Dist. LEXIS 14679, *1, *4-

5 (E.D.Pa. 2000).  See also Tedeschi v. Sysco Foods of Philadelphia, Inc., 11 Am.

Disabilities Cas. (BNA) 263, ___, 2000 U.S. Dist. LEXIS 12994, *1, *11-12 (E.D.Pa.

2000).  However, in order to establish that she was 'disabled,' Plaintiff must also

establish that she had "a mental impairment that substantially limit[ed] a major life

activity."  Johnson, supra, 11 Am. Disabilities Cas. (BNA) at ___, 2000 U.S. Dist. LEXIS

14679 at *4

Defendants concede that working is a "major life activity."  Defendants'

Memorandum at p. 22.  However, Defendants contend that Plaintiff is unable to establish

that her illness impaired her ability to work.  Id.  Additionally, Defendants claim that

23

Plaintiff's alleged inability to work was limited only to her ability to work for Kevin Pennington "and others in Agere's Human Resources department." Id. These assertions are specious.

First, Defendants conveniently ignore evidence that, not only was Plaintiff's ability to work at Agere affected by her depression and PTSD, she also lost two adjunct teaching positions at local colleges. Bailey Dep. at pp. 235, 308, 312; Goy Dep. at p.20, 23. Additionally, Dr. Goy, the physician who serviced Agere's disability program, id. at p. 7, testified that Plaintiff's inability to work was "more of a general thing," based on the fact that Plaintiff was having trouble concentrating and sleeping. Id. at p. 18. Thus, Plaintiff has presented *prima facie* evidence that her inability to work was not confined to working for Agere. Contrast Tedeschi, supra, 11 Am. Disabilities Cas. (BNA) at ___, 2000 U.S. Dist. LEXIS 12994 at *19-20 (summary judgment for employer granted where employee's alleged disability prohibited him from performing only a "narrow range of jobs").

Additionally, both Dr. Goy and Dr. Twaddle concurred that a primary symptom of depression is an inability to concentrate. Goy Dep. at p. 18; Twaddle Dep. at pp. 12-13, 16. Both stress and the inability to concentrate, in turn, undermine a depressed individual's ability to think. See Goy Dep. at p. 18. Not surprisingly, Plaintiff testified to a difficulty with clear thinking which continued until the date of her deposition in March 2003. Bailey Dep. at pp. 244-45. Thinking, in turn, is another "major life activity," the

24

impairment of which constitutes a "disability" for ADA purposes.  <u>Johnson</u>, <u>supra</u>, 11

Am. Disabilities Cas. (BNA) at ___, 2000 U.S. Dist. LEXIS 14679 at *5.

     Moreover, Dr. Bailey testified that her depression-induced difficulty sleeping, as

well as her stress, had begun in March 2001 and continued for two years up until the date

of her deposition, in March 2003.  <u>See</u> Bailey Dep. at pp. 230, 233-235.  Dr. Bailey also

testified to difficulties caring for herself, speaking, and breathing (as a result of panic

attacks brought on by the depression and PTSD) -- difficulties that continued for as long

as two years and are ongoing.  <u>See</u> Bailey Dep. at pp. 235-45.  Plainly, then, the

limitations resulting from Plaintiff's mental illness were far more extreme than the

"temporary" and "non-chronic" limitations Defendants allege.  <u>See</u> Defendants'

Memorandum at pp. 21-22.

     "Major life activities include functions such as caring for oneself, performing

manual tasks, walking seeing, hearing, speaking, breathing, learning and working."

<u>Tedeschi</u>, <u>supra</u>, 11 Am. Disabilities Cas. (BNA) at ___, 2000 U.S. Dist. LEXIS 12994 at

*13.  Given the evidence Plaintiff has presented as to the extent to which her illness has

impacted her ability to perform such major life activities, it is clear that Plaintiff has met

her burden of establishing that she has a "disability" within the meaning of the ADA.  <u>See</u>

<u>Johnson</u>, <u>supra</u>, 11 Am. Disabilities Cas. (BNA) at ___, 2000 U.S. Dist. LEXIS 14679 at

*5.

Plaintiff has also provided sufficient evidence to support the conclusion that, in fact, her employer knew of her disability at the time she was terminated. Dr. Bailey testified to facts which would permit a jury to conclude that Kevin Pennington was aware of her mental disability. See Bailey Dep. at pp. 130, 211, 253.

Additionally, Plaintiff has presented ample evidence that Defendants violated her right to privacy as to her disability, as protected under the ADA. See Ballard v. Healthsouth Corp., 147 F.Supp.2d 529, 534 (N.D.Texas, Dallas Div. 2001) (discussing provisions of 42 U.S.C. § 12112(d)). It is undisputed that, as EAP Manager for Agere, Susan Lovegrove-Geise had a duty to protect Plaintiff's confidential communications made to her the course of the counseling Plaintiff underwent as treatment for her depression. Contrast Greet supra, 1996 U.S. Dist. LEXIS 18635 at *4-5 (holding, on basis of Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), that police officer's counseling records from Employee Assistance Program were protected from disclosure in civil action) with Ballard v. Healthsouth Corp., 147 F.Supp.2d at 534–35 (confidentiality provisions of Americans With Disabilities Act applies unless employee *voluntarily* recounts otherwise confidential information to employer). See also Lovegrove-Geise Dep. at p. 7 (noting that "[a]ll information" recounted to EAP counselors was to be "held in confidence").

By violating Dr. Bailey's confidence, Lovegrove-Geise put into action a chain of events that led Mr. Pennington to fire Dr. Bailey for making the very statements

26

Lovegrove-Geise had a duty to keep confidential.  It is undisputed that Plaintiff never

directly threatened Kevin Pennington.  Rather, she communicated her frustration with Mr.

Pennington to her doctors and counselors in the course of her treatment for depression.

See Goy Deposition at pp. 26, 28, 49; Twaddle Deposition at p. 20; Gordy Deposition at

p. 32; Lovegrove-Geise Deposition at pp. 21-22.  In the absence of any *credible* threat to

Mr. Pennington, this is exactly the sort of information that should have remained

confidential, as Plaintiff's frustration with Mr. Pennington was, in large part, the basis for

her depression and, therefore, discussing it was necessary to her successful treatment.

In arguing that Plaintiff was fired for threatening the life of Kevin Pennington,

Defendants ignore this breach of confidentiality which led to the disclosure of the alleged

threat.  However, in the first instance, it was Defendants who bore a responsibility to

Plaintiff to maintain her confidentiality about all aspects of her disability and treatment.

See Ballard, supra, 147 F.Supp.2d at 534–35.  Plaintiff has proffered evidence refuting

Defendants' allegedly legitimate reasons for breaching her confidentiality, and has also

provided evidence to support the conclusion that Plaintiff was fired because Defendants

impermissibly discriminated against her on the basis of her race, her gender, the alleged

"threat" (which was nothing more than a symptom of her illness, see, e.g., Twaddle Dep.

at pp. 16, 20) and in retaliation for her filing of an EEOC complaint.  See supra, Points I,

II, and III.  As discussed above, Plaintiff has set forth ample evidence to refute this

alleged reason for her termination, including her explicit denial that she ever threatened

27

Kevin Pennington.  For this reason, and because Plaintiff's mental illness/disability was

part and parcel of her prior EEOC complaints, <u>Antol v. Perry</u>, 82 F.3d 1291, 1295 (3rd

Cir. 1996), Defendants' summary judgment motion as to Plaintiff's ADA claim should be

denied.  See <u>Pentasuglio v. Hartford Ins. Group</u>, 2001 U.S. Dist. LEXIS 13802, *1, *16-

17 (M.D.Pa. 2001) (summary judgment on ADA claim denied where employee alleged

facts which, if true, would support a jury finding that the employer discriminated against

employee because of his "depressive and anxiety disorder" by eliminating employee's

position).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Garnell Bailey respectfully requests that this

Court deny Defendants' motion for summary judgment in its entirety.


Respectfully submitted,


_____
GLENNIS L. CLARK
I. D. No. 36682
Attorney for Plaintiff
LAW OFFICE OF GLENNIS L. CLARK
532 Walnut Street
Allentown, PA 1810
(610) 433-6624

## CERTIFICATE OF SERVICE

I, Glennis L. Clark, Esquire, hereby certify that I have caused to be served a true and correct copy of the Memorandum of Law In Opposition to Defendants' Motion of Summary Judgment via first class mail, postage prepaid on the date stated below to the offices of:


Robert W. Cameron, Esquire
Littler, Mendelson
Dominion Tower
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222


Dated: _____        _____
                               GLENNIS L. CLARK
                               I. D. No. 36682
                               Attorney for Plaintiff
                               LAW OFFICE OF GLENNIS L. CLARK
                               532 Walnut Street
                               Allentown, PA 1810
                               (610) 433-6624

29