UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARNELL BAILEY : | No. 02-CV-4683 |
| 3563 Driftwood Place : | |
| Bethlehem, PA 18020 : | |
| : | |
| v. : | |
| : | |
| LUCENT TECHNOLOGIES INC. : | JURY TRIAL DEMANDED |
| 555 Union Boulevard : | |
| Allentown, PA 18109-3286 : | |
| : | |
| AND : | |
| : | |
| AGERE SYSTEMS INC. : | JUDGE JAMES KNOLL GARDNER |
| 555 Union Boulevard : | |
| Allentown, PA 18109-3286 : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS *IN LIMINE***

Plaintiff Garnell Bailey, by and through her counsel, Glennis L. Clark, Esquire, hereby files this Memorandum of Law In Opposition to Defendants' Motions *in Limine* seeking to Exclude Evidence of: 1) Alleged Threats Made by Dewayne Rideout; 2) Severance Payments Made to Other Employees; 3) Stock Option grants prior to 2001; and 4) Non-Human Resources Department Director Salaries.

I. **Relevant Facts**

Garnell Bailey, hereinafter referred to as "Plaintiff", has brought claims of race

and sex discrimination against her former employer pursuant to Title VII, Section 1981, The Equal Pay Act and the Pennsylvania Human Relations Act.

Plaintiff, an African American female, alleges race and gender discrimination on the grounds that the defendants discriminated against her in setting her salary, benefits and stock options at a level significantly below that of Caucasian males at the comparable director level. Plaintiff also alleges that defendants eliminated her prior position, reassigning her duties to white males, some of whom have lesser levels of education and experience, but all of whom are at higher salary levels. Further, plaintiff alleges that the defendants hired or promoted four (4) white males to positions of director at the same time the defendants eliminated plaintiff's supervisory position.

Plaintiff contends that defendants discriminated against her when they eliminated her position where she had responsibility for supervising almost sixty (60) employees and creating a position which had little or no authority and no supervisory responsibility. At the same time, plaintiff maintains that many of her job responsibilities were reassigned to Caucasian males.

II. **Argument**

The defendants contend that the evidence at trial should be limited regarding four issues which will be presented at trial. The defendant's requests for motions *in limine* regarding these issues are meritless. For the sake of brevity, the plaintiff will respond to all four motions in one responsive pleading.

A. **Evidence of alleged threats by a male employee**

Defendants are seeking to bar evidence that a male director/vice president threatened several colleagues and was not disciplined or terminated for his alleged transgressions. In fact, the male, Dwayne Rideout, was provided with a generous severance package when he left the company. Deposition of Garnell Bailey, dated March 28, 2003 [hereinafter "Bailey Dep."] at pp. 106-07.

This evidence supports Bailey's gender-based discrimination claim by proving that she was treated differently than males who allegedly threatened coworkers. It must be noted here that Bailey emphatically denies that she ever threatened Kevin Pennington or any other employee at Agere. In fact, Bailey was on a disability leave for depression and post-traumatic stress disorder. See Deposition of Patricia Gordy (dated Aug. 18, 2003) [hereinafter "Gordy Dep."] at pp. 22, 26, 68-69; Deposition of Richard Goy, M.D., dated July 29, 2003 [hereinafter "Goy Dep."] at p. 15; Deposition of Hugo N. Twaddle, M.D., dated July 29, 2003 [hereinafter "Twaddle Dep."] at p. 20. While on disability leave, and during a therapeutic session, Bailey commented that she had purchased a gun and bullets with "Pennington's name on them." Gordy Dep. at p. 32. These comments were made in a therapeutic session on August 21, 2001. Id. See also Gordy Exh. 1 (Records of Patricia Gordy pertaining to Garnell Bailey), notes for Aug. 21, 2001.

Six weeks later, on or about October 1st, Pennington was advised of the comments made in August. See Deposition of Susan Lovegrove-Geise, dated Aug. 12, 2001, at p.

3

21. Subsequently, Bailey was released to return to work by her health care providers and by Agere's own physician, Richard Goy. Twaddle Dep. at p. 25; Goy Dep. at pp. 34-35.

Defendants argue that Rideout's statement to one colleague, that he "should come in here with a gun and start shooting people's heads off," and his statement to another, "I'm going to come over that table and kill you," is inadmissible and irrelevant to the issues in this case. To the contrary, these statements and the company's response to them is not only relevant but is extremely probative on the issue of whether Bailey was treated differently than males in the company.

Judicial precedent holds that relevant evidence must have some tendency to make the existence of a consequential fact more probable or less probable than it would be without the evidence. Ueland v. United States, 291 F.3d 993, 997-998 (7th Cir. 2002). Any proffered evidence that appears to alter the probabilities that "any fact of consequence to the determination of the action" exists is relevant. Rutherford v. Harris County, 197 F.3d 173, 186 (5th Cir. 1999). Further, "[t]he standard for admissibility under Federal Rule of Evidence 401 is a liberal one." Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 6 (1st Cir. 2001).

Agere's claim that the plaintiff cannot properly compare her alleged actions to those of Rideout because they were not of a "comparable seriousness" is not only disingenuous but is completely ludicrous. Whether the alleged actions are of "comparable seriousness" raises a jury question, and is not a proper subject for a motion

4

*in limine.* See United States v. Bellrichard, 779 F.Supp. 454, 458 (D. Minn. 1991), aff'd 994 F.2d 1318 (8th Cir. 1993), cert. denied 510 U.S. 928 (1993).

Moreover, the issue regarding whether a threat is a threat is not a subjective determination made by the person receiving the alleged threat. Id. ("The standard for submitting the charge [of mailing threatening letters] to the jury is objective and contextual: If a reasonable recipient, familiar with the context of the communication, would interpret it as a threat, the issue should go to the jury.") (internal citation omitted). Thus, Riley and Hill's subjective post hoc statements regarding whether they took Rideout's statements as a threat is irrelevant.

Agere's reliance on Rule 403 to exclude evidence of alleged threats is also misplaced because the defendants offer no support for their assertion that unfair prejudice could result from the admission of this evidence. "Unfair prejudice" within the meaning of the rule means an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.

Agere's self-serving statement that "Allowing the jury to hear evidence regarding the threats made by Rideout would unfairly prejudice Defendants" does not suggest any improper basis for the jury to render a decision. In fact, the evidence at issue is exactly the type of evidence which a fact finder must hear to evaluate Bailey's claims. "Unfair prejudice" is not to be equated with testimony that is simply adverse to the opposing party. Virtually all evidence is prejudicial or it is immaterial. The prejudice must be

4

unfair to render the evidence inadmissible. Dollar v. Long Mfg., N.C. Inc., 561 F.2d 613, 618 (5th Cir. 1977). To be unfair, the relevant evidence must result in an adverse impact beyond its tendency to prove the fact or issue at hand. See United States v. Murillo, 288 F.3d 1126, 1137 (9th Cir. 2002).

Lastly, it is axiomatic that Rule 403 requires the trial court to balance the probative value of the relevant evidence against the detrimental effects of admitting the evidence. "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." See Deters v. Equifax Credit Info. Servs., 202 F.3d 1262, 1273-1274 (10th Cir. 2000) (nternal citation omitted). Furthermore, the general thrust of the Federal Rules is toward the admissibility of relevant evidence and therefore any unfair prejudice must substantially outweigh probative value to result in exclusion of such relevant evidence. See United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002).

   B. **STOCK OPTION GRANTS**

Bailey contends that she was given fewer stock option grants than other Caucasians and males when she was promoted to director in August 2000. Bailey testified that Rideout, who promoted her, had recommended stock option grants totaling 45,000 shares. Bailey Dep. at pp. 37, 71. In calendar year 2000, Bailey did not receive the 45,000 shares as was promised. See Deposition of Kevin Pennington, dated Aug. 13, 2003 [hereinafter "Pennington Dep."] at pp. 86-87. In 2001, Bailey received 30,000

5

shares. Id. See also Bailey Dep. at p. 71. By contrast, a white male, Russell Diehl, received 45,000 shares at Pennington's direction. See Pennington Dep. at pp. 22, 61. Agere believed the white male recipient of the larger amount of shares was more deserving despite the fact he had been out on sick leave much of the year. See id. at p. 61.

Agere claims that evidence regarding stock option grants in 2000 are not relevant. Clearly, the fact that Bailey was promoted in 2000 makes relevant the stock option grants for that year. The plaintiff must be allowed to argue any relevant facts concerning Agere's failure to grant her any stock options in 2000 despite her promotion to director.

Thus, evidence regarding the stock option grants and the fact that Bailey did not receive them in 2000 does tend to make more probable than not the conclusion that she was denied stock options in violation of her federally protected rights.

C. **EVIDENCE OF SEVERANCE PAYMENTS**

Bailey maintains that she was denied a severance package when such packages were offered to other similarly-situated employees leaving the company.

Agere's contention that this proffered evidence is not relevant to issues in the case is in error. Significantly, no jury has determined that Bailey was, in fact, terminated for cause, and Bailey's assertion that she was, instead, terminated on the basis of race and gender discrimination is at the heart of this case. Agere's assertion that Bailey was terminated for cause merely constitutes its defense – at trial – that it based its employment

6

decisions on legitimate, nondiscriminatory considerations. See Jones v. Sch. Dist. of Philadelphia, 19 F.Supp.2d 414, 418 (E.D.Pa. 1998). To argue, on the basis of this assertion, that Bailey may not present evidence at trial to refute Agere's proffered reasons for her discharge is putting the cart before the horse.

Clearly, evidence that other employees leaving the company received severance packages is relevant and probative of whether Agere discriminated against Bailey. Significantly, Bailey sought a severance package before any issues arose regarding her termination, yet no specific package was offered to her at that time. See Bailey Dep. at p. 68. See also Pennington Dep. at pp. 51-52, 54. Moreover, Pennington's testimony, that Agere had no policy of providing a severance package to an employee terminated for cause, id. at p. 106, constitutes evidence of Agere's monetary motive for firing Bailey on the pretext of her alleged threat against Pennington.

As previously noted, Agere has offered no facts to support excluding this evidence under Rule 403. Specifically, Agere cannot reasonably assert that this evidence will unfairly prejudice the defense simply because it is probative on the question of whether Agere's alleged reasons for firing Bailey were mere pretext.

### D. NON-HUMAN RESOURCES DEPARTMENT DIRECTOR SALARIES

Rules 401 and 402 do not preclude evidence pertaining to the salaries of directors outside the human resources department. Bailey asserts that she was discriminated

against in her compensation because Agere paid white male directors more than she, and paid at least one senior manager more than she. Bailey Dep. at pp. 61-62. Nothing in the discovery or the pleadings limits Bailey's right to offer evidence of discrepancies in her compensation at Agere.

To the contrary, in adopting the EPA's definition of "equal work" as "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," 29 U.S.C. § 206 (d) (1), Congress explicitly noted that the job classification systems created by most companies already utilize these factors to evaluate their employees' abilities and determine their appropriate positions within the company. Corning Glass Works v. Brennan, 417 U.S. 188, 199-202 (1974). Additionally, nothing in Defendants' guidelines for compensating directors identifies director positions in the Human Resources department as requiring less compensation as compared to other directors in the company at large. See Pennington Exhs. 4 (stock option guidelines) and 8 (salary structure). Thus, the very fact that Bailey was made a director at Agere is *prima facie* evidence that Defendants considered her position equal -- in terms of "skill, effort, responsibility and working conditions" – to those of other directors in the company. See id. at 202-03.

Moreover, Bailey claims that other directors in the company who did not have qualifications, experience and seniority comparable to hers nevertheless received greater compensation than she did. For this reason, comparison of Bailey's salary and stock

8

options – as well as her qualifications – to those of other directors in the company is highly relevant to her claim that she was unfairly discriminated against by Defendants.

### III. **Conclusion**

For the foregoing reasons, plaintiff respectfully requests that this Court deny Defendants' motions *in limine* in their entirety.

                              Respectfully submitted,

                              _____
                              GLENNIS L. CLARK
                              I.D. No. 36682
                              Counsel for Plaintiff
                              532 Walnut Street
                              Allentown, PA 1810
                              (610) 433-6624

DATED:   October 27, 2003