IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARNELL BAILEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 02-4683 |
| ) | |
| v. ) | Judge James Knoll Gardner |
| ) | |
| LUCENT TECHNOLOGIES INC. and ) | |
| AGERE SYSTEMS INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Lucent Technologies Inc. and Agere Systems Inc. (collectively, "Agere"), by and through their undersigned counsel and with leave of court, hereby reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition").

**I.      Plaintiff's Opposition Makes Factual Assertions Unsupported by the Record.**

Agere's opening Memorandum explained in detail the reasons Agere took the actions about which Plaintiff, Garnell Bailey ("Bailey"), complains. Plaintiff's Opposition fails to create a genuine issue of fact that those stated reasons were a pretext for unlawful discrimination or retaliation. Although Agere will not respond *seriatim* to all of the allegations raised in Plaintiff's Opposition, it is important to highlight several instances in which the alleged facts stated by Bailey are unsupported by the record:

- Bailey alleges that white men who had shorter periods of service with the company than she did received "generous severance packages." (Pl. Opp. at 4.) The portions of Kevin Pennington's deposition to which Bailey cites, however, simply do not support that proposition,

nor do they mention severance at all. Pennington's undisputed testimony was that Agere has *no* severance policy and that severance determinations are made on a case-by-case basis. (Ex. A, Pennington Dep. at 105). Although Pennington did testify that Michael Henrici received a severance payment of "a couple of months," (Ex. A, Pennington Dep. at 105), Bailey has not explained how she was similarly situated to him: unlike Bailey, there is no evidence that Henrici was terminated for cause. For these reasons, the decision not to provide Bailey severance is not evidence of discrimination.

- With respect to her compensation claims, Bailey asserts that "nothing in Defendants' guidelines for compensating directors identifies Plaintiff's position as requiring less compensation as compared to other directors in the department or the company at large." (Pl. Opp. at 9). Bailey also claims that Agere is asking the Court to "differentiate between jobs that the company itself has always equated as equal." (Pl. Opp. at 10, quoting Corning Glass Works v. Brennan, 417 U.S. 188, 203 (1974)). These statements are simply wrong and ignore Agere's salary guidelines. For 2001, the year at issue, Agere's salary guidelines provided a base salary range for directors of $71,000 to $182,800, with a reference point of $113,500. (Ex. A, Pennington Dep. Ex. 8). It is inherent in the wide salary range for directors that Agere does not consider all directors "equal" merely because they have the same job title. Bailey's assertion that she was entitled to be paid the same as all other directors, without regard to the work duties they performed, misrepresents both Agere policy and the law under Title VII and the Equal Pay Act. See Angelo v. Bacharach Instrument Co., 555 F.2d 1164 (3d Cir. 1977) (job content, not job title, is controlling factor in equal pay analysis).

- Bailey alleges that Pennington had no "good faith belief" that Bailey proposed a credible threat to him. (Pl. Opp. at 13). She cites no record authority for this proposition. To

2

the contrary, Pennington received warning of the threat from a medical professional, Lovegrove-Geise. (Ex. A, Pennington Dep. at 62). Moreover, his conduct in response to the threat – he called his wife to warn her, spoke with Agere Security, and called the police, (Ex. A, Pennington Dep. at 63-64) – demonstrates uncontrovertibly that he took the threat seriously.

- Although Agere denies this claim, Bailey alleges that Pennington accused her of sleeping with Dewayne Rideout. (Pl. Opp. at 18-19). Based on those allegations, Bailey goes on to allege that Pennington believed Bailey was competing with Patricia Chila for Rideout's "amourous attentions" and that he would not have made the same assumptions had Bailey been a male or white. (Pl. Opp. at 19). Bailey cites no authority for these conclusions and they are complete, wild speculation. Bailey has not demonstrated that Pennington actually believed she and Patricia Chila to be romantic rivals. More importantly, she has cited no evidence to support her speculation that Pennington arrived at any alleged conclusions regarding Bailey's relationship with Rideout based on the fact that Bailey is a black female.

- Bailey alleges that there was a "perception among Agere's employees" that Agere's management operated as an "old boys network." As an initial matter, this statement, which was attributed to an unidentified Agere employee in a report prepared by an outside consultant, is inadmissible hearsay and the court should not consider it.[1] Blackburn v. United Parcel Serv., 179 F.3d 81, 95 (3d Cir.1999) (hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion.). Moreover, the statement of a single employee does not demonstrate that the company had a corporate culture of discrimination. See Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) (contrasting

---

[1] In fact, the statement is "double hearsay": both the consultant's report and the employee statement are hearsay. See Fed R. Evid. 801(c).

3

statement of CEO, which could be used to establish managerial policy of discrimination, from statement of a low-level supervisor, which could not).

- In order to support her claim of retaliation, Bailey cites to an alleged "course of discriminatory conduct" which she says extended from her EEOC filing in August 2001 to her termination in December 2001. (Pl. Opp. at 21). All of the events she cites, however, allegedly occurred *before* she filed a charge of discrimination with the EEOC in August 2001. Bailey was out of work on disability leave from June 8, 2001 until December 2001. (Ex. B, Bailey Dep. at 67; Ex. C, Goy Dep. at 34-35, Ex. 9). Because the alleged events about which she complains occurred prior to her engaging in protected activity, they cannot support her retaliation claim. Shaner v Synthes, 204 F.3d 494, 504-05 (3d Cir. 2000).

**II.   Agere's Reliance on Bailey's Statements to Her EAP Counselor in Terminating Bailey Was Not Discriminatory or Retaliatory and Does Not Violate the ADA.**

Bailey argues that her threat toward Kevin Pennington was not a "legitimate" basis for her termination because it was made in the course of a "confidential therapeutic relationship." (Pl. Opp. at 15-16). This statement is both inaccurate and irrelevant.

First, Susan Lovegrove-Geise, Bailey's EAP counselor was required to disclose the threat to Pennington. Under Pennsylvania law, a medical professional has a duty to warn where a patient has threatened to harm a specific individual. Emerich v. Philadelphia Ctr. for Human Development, Inc., 720 A.2d 1032, 1040 (Pa. 1990) ("a mental health professional who determines, or under the standards of the mental health profession, should have determined, that his patient presents a serious danger of violence to another, bears a duty to exercise reasonable care to protect by warning the intended victim against such danger.") Lovegrove-Geise testified that Bailey's comments triggered a professional duty to warn. (Ex. D, Lovegrove-Geise Dep. at

4

25-26). No medical professional has contradicted this determination. Indeed, Patricia Gordy confirmed that a duty to warn arises when a client indicates an intention to harm somebody. (Ex. E, Gordy Dep. at 52). Therefore, not only was Lovegrove-Geise permitted to disclose Bailey's threat to Pennington, she was *required* to do so. See Emerich, 720 A.2d 1032.

Second, even assuming that Bailey's threat was made in the context of a "confidential therapeutic relationship," Bailey has failed to explain how this fact would make Agere's decision to terminate her discriminatory or retaliatory. This Court does not review whether Agere's stated reason for terminating Bailey was appropriate, but only whether Agere has provided an honest explanation for its behavior. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995). Even if Bailey could demonstrate that her statement to Lovegrove-Geise was "confidential," Agere's reliance on that statement as a basis for terminating Bailey is not, as a matter of law, unlawful race, sex or disability discrimination or retaliation. See id.

Finally, Bailey improperly alleges that Lovegrove-Geise's disclosure to Pennington was a violation of the ADA's confidentiality provisions, 42 U.S.C. § 12112(d). (Pl. Opp. at 26). Section 12112(d) protects the confidentiality of information regarding an individual's "medical condition and history." In disclosing Bailey's threat to harm Pennington, Lovegrove-Geise did not disclose any information regarding Bailey's medical condition – *e.g.*, her diagnosis, symptoms, treatment or prognosis – to Pennington or anyone else at Agere. Bailey has cited *no* authority to support the proposition that her threat toward Pennington is information regarding her medical condition. Indeed, such an interpretation would place inconsistent obligations upon medical professionals like Lovegrove-Geise, who would have violated her professional duties and subjected herself to civil liability had she failed to reveal the threat. See Emerich, 720 A.2d 1032. Therefore, her disclosure of the threat alone, as opposed to medical information, did not

5

violate the ADA.

### III. Bailey Was Not Substantially Limited in a Major Life Activity.

In order to establish a "disability" under the ADA, Bailey must demonstrate that she was substantially limited in one or more major life activities." 42 U.S.C. § 12102(2); see Olson v. General Elec. Astrospace, 101 F.3d 947, 952 (3d Cir. 1996). The finding of a substantial limitation requires a "significant restriction" in comparison to the "average person." 29.C.F.R. § 1630.2(j)(1); Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 200 (2002). In its opening Memorandum, Agere addressed Bailey's claim that she was substantially limited in her ability to work, think and sleep. In her Opposition, Bailey now also claims that she was substantially limited in the major life activities of caring for herself, speaking and breathing.

Although Bailey did testify to limitations in these areas, there is no evidence that she was significantly limited in them when compared to the average person. When addressing major life activities other than working, "the central inquiry must be whether [Bailey] is unable to perform the variety of tasks central to most people's daily lives." See Toyota, 534 U.S. at 200. With respect to caring for herself, Bailey's impairment was temporary: she began her disability leave on June 8, 2001, and testified that she was able to care for herself again after August 4, 2001. (Ex. B, Bailey Dep. at 67, 240). This less than two-month impairment is not a substantial limitation as a matter of law. See Layser v. Morrison, 935 F. Supp. 562, 569 (E.D Pa. 1995) (mental impairment forcing removal of plaintiff from work force for three months too temporary to be considered a disability).

With respect to her ability to speak and breathe, Bailey testified that she only had isolated problems in these areas on a few occasions. (Ex. B, Bailey Dep. at 241-44). There is no evidence that these isolated occurrences prevented Bailey from performing tasks central to her

daily life, or that she was significantly restricted in breathing or speaking when compared to the average person.  See Toyota, 534 U.S. at 200.

Bailey has not established a substantial limitation in any major life activity, and Agere is entitled to summary judgment on her ADA claims.

### IV.  Conclusion

For the foregoing reasons, as well as those set forth in Agere's opening Memorandum, Agere is entitled to summary judgment on all claims in Bailey's Amended Complaint.

Respectfully submitted,

_____
Robert W. Cameron  (Pa. I.D. No. 69059)
Theodore A. Schroeder  (Pa. I.D. No. 80559)
LITTLER MENDELSON, P.C.
Dominion Tower
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
Tel:  (412) 201-7600

Attorneys for Defendants,
Lucent Technologies Inc. and Agere Systems Inc.

Dated:  October 31, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2003, I caused a true and correct copy of the foregoing **Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment** to be served by U.S. Mail, first-class, postage prepaid, on the following counsel of record:

>Glennis L. Clark, Esquire
>532 Walnut Street
>Allentown, PA  18101

Theodore A. Schroeder

PITTSBURGH:28686.1 042480.1004