IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| GARNELL BAILEY, | : | |
| | : | |
| Plaintiff, | : | No. 02-CV-4683 |
| | : | |
| V. | : | The Honorable James Knoll Gardner |
| | : | |
| LUCENT TECHNOLOGIES INC. | : | |
| and AGERE SYSTEMS INC., | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION
TO THE ADMISSIBILITY OF EVIDENCE EXPECTED TO BE
OFFERED AT TRIAL

Plaintiff, by and through her counsel, GLENNIS L. CLARK, ESQUIRE, hereby files this Memorandum of Law in Support of Plaintiff's Objection to the Admissibility of Evidence Expected to be Offered at Trial allegedly threatening remarks pertaining to Kevin Pennington, on the ground that they were protected from disclosure by a psychotherapist-patient evidentiary privilege.

Respectfully submitted,

_____
GLENNIS L. CLARK, ESQUIRE
I.D. No. 36682
Counsel for Plaintiff
LAW OFFICES OF GLENNIS L. CLARK
1908 Allen Street
Allentown, PA 18104
(610) 433-6624

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. ...............................................................................i

FACTUAL BACKGROUND. ............................................................................1

ARGUMENT

    I.  DR. BAILEY'S STATEMENTS TO GORDY AND LOVEGROVE-GEISE WERE PROTECTED FROM DISCLOSURE UNDER THE PSYCHOTHERAPIST-PATIENT PRIVILEGE. ................................................3

    II. PLAINTIFF HAS NOT WAIVED HER PSYCHOTHERAPIST-PATIENT PRIVILEGE AND LOVEGROVE-GEISE HAD NO 'DUTY TO WARN'. ........................................................................5

CONCLUSION. ................................................................................................12

# **TABLE OF AUTHORITIES**

**Statutes/Rules**

FED. R. EVID. 501. ...........................................................................................4 <u>and</u> 4 n. 3

42 U.S.C. § 12112(d). ......................................................................................................3 n. 2

42 U.S.C. § 1983. ....................................................................................................................4

42 Pa. C.S. § 5944. ..............................................................................................................3, 4

49 Pa. Code § 41.61. ...............................................................................................................8

**Cases**

Ballard v. Healthsouth Corp., 147 F.Supp.2d 529 (N.D.Texas, Dallas Div. 2001). ....3 n. 2

Barrett v. Vojtas, 182 F.R.D. 177 (W.D. Pa. 1998). ................................................5, 6 n. 4

Davis v. City of Philadelphia Water Dep't, 57 Fed. Appx. 90, 2003 U.S. App. LEXIS 1760, *1, (3rd Cir. 2003). ...............................................................................................10

Dose v. Buena Vista Univ., 229 F. Supp.2d 910 (N.D. Iowa 2002). ............................10

Emerich v. Philadelphia Ctr. for Human Dev., 554 Pa. 209, 720 A.2d 1032 (1998). ..........................................................................................................*passim*

Greet v. Zagrocki, 1996 U.S. Dist. LEXIS 18635, *1 (E.D.Pa. 1996). .....................*passim*

Hugley v. Art Institute of Chicago, 3 F. Supp.2d 900 (N.D. Ill. 1998). ..........................10

Jaffee v. Redmond, 518 U.S. 1, 116 S. Ct. 1923, 135 L.Ed.2d 337 (1996). .............*passim*

Jones v. American Postal Workers Union Nat'l, 192 F.3d 417 (4th Cir. 1999). ...............10

Pearson v. Miller, 211 F.3d 57, 2000 U.S. App. LEXIS 8072, **1 (3rd Cir. 2000). ................................................................................................5, 6 n. 4

Phillips v. Union Pac. R.R., 216 F.3d 703 (8th Cir. 2000). ............................................10

Siegel v. Abbottstown Borough, 2004 U.S. Dist. LEXIS 1284, *1
    (M.D. Pa. 2004). ..................................................................................5, 11

United States v. Ellis, 2003 U.S. Dist. LEXIS 9729, *1 (E.D. Pa. 2003). ...............5, 6 n. 4

**FACTUAL BACKGROUND**

According to Plaintiff's therapist, Patricia Gordy, the first time Plaintiff mentioned that she had purchased a gun was on August 21, 2001. See Deposition of Patricia Gordy (dated Aug. 18, 2003) [hereinafter "Gordy Dep."] at p. 32. See also Gordy Exh. 1 (Records of Patricia Gordy pertaining to Garnell Bailey), notes for Aug. 21, 2001.[1] Gordy testified that Dr. Bailey told her she had also bought one hundred bullets and "they have Kevin Pennington's name on them." Gordy Dep. at p. 32. As Dr. Bailey explained to Gordy, "[s]he felt so diminished by the treatment she received at work, that the gun was empowering her." Gordy Exh. 1, notes for Aug. 21, 2001. When Gordy informed Dr. Bailey that she had a duty to warn Pennington if Dr. Bailey intended to harm him, Dr. Bailey responded, "Pat, I don't have any intention to harm anyone." Id. at pp. 32-33.

Nevertheless, Gordy contacted Dr. Bailey's husband to seek "reassurance" from him that the gun was "controlled/locked." Gordy Exh. 1, notes for Aug. 21, 2001 and Aug. 22, 2001. See also Gordy Dep. at pp. 33-35. In addition, Gordy contacted Susan Lovegrove-Geise, Agere's Employee Assistance Manager, to inform her of the conversation with Dr. Bailey. Id. at pp. 33-35. Once Dr. Bailey's husband had advised Gordy that he did not believe Dr. Bailey was a threat to anyone but that he would, nevertheless, keep the gun locked up, and Lovegrove-Geise had told Gordy that she

---

[1] All references to exhibits are to those attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.

would meet with Dr. Bailey to discuss the issue of the gun, Gordy made no further reports to anyone concerning the incident. See id. at pp. 34-36. See also Gordy Exh. 1, notes for Aug. 21, 2001 and Aug. 22, 2001.

In subsequent conversations with Gordy, the first on August 27, 2001, Dr. Bailey continued to reassure Gordy that she had no intention of harming anyone. Gordy Dep. at p. 36.

Then, on October 1st, according to Lovegrove-Geise, she had a telephone conversation with Dr. Bailey in which Dr. Bailey "was venting about her feelings about Kevin Pennington and indicated that she even bought a gun. . . . And when I asked her if she could tell me that she would not harm him, she said that she could not tell me that." Deposition of Susan Lovegrove-Geise, dated Aug. 12, 2001 [hereinafter "Lovegrove-Geise Dep."] at p. 21. Believing that she had a duty to warn Mr. Pennington, Lovegrove-Geise did so, and also telephoned Gordy to inform Gordy that Dr. Bailey had made a threat and Lovegrove-Geise had "initiated an action" against Dr. Bailey at Agere. Gordy Dep. at pp. 38, 40; Lovegrove-Geise Dep. at p. 38.

Gordy then met with Dr. Bailey on October 3rd. Gordy Dep. at p. 38. On that date, Dr. Bailey told Gordy that she "needed to ascertain proof that she had no intention to harm Kevin Pennington," and therefore, she had returned the gun to the store from which she had bought it. Gordy Dep. at p. 40. Dr. Bailey had brought a copy of the receipt for the gun, indicating it had been returned to the store, to Gordy as evidence of her lack of

2

intent to harm Mr. Pennington. Id. at p. 41. On the same date, Gordy contacted Susan Lovegrove-Geise and informed her that Dr. Bailey had returned the gun to the store. Id. at p. 60. Gordy was satisfied that Dr. Bailey, in fact, harbored no intent to harm Mr. Pennington, id., and "never saw an indication that she would actually harm somebody." Id. at p. 67.

Nevertheless, when Plaintiff was cleared by her doctors to return to work in December 2001, Mr. Pennington fired her, allegedly for threatening his life. Pennington Dep. at pp. 67-68.

**ARGUMENT**

> I. DR. BAILEY'S STATEMENTS TO GORDY AND LOVEGROVE-GEISE WERE PROTECTED FROM DISCLOSURE UNDER THE PSYCHOTHERAPIST-PATIENT PRIVILEGE

Defendants have conceded that the statements at issue – if made at all – were made to Plaintiff's therapist and to Defendants' Employee Assistance Program Manager in the course of treating Plaintiff's depression. Unquestionably, those statements constitute confidential communications that were protected by a therapeutic confidentiality privilege, under both state and federal law.[2] See Jaffee v. Redmond, 518 U.S. 1, 116 S. Ct. 1923, 135 L.Ed.2d 337 (1996); Greet v. Zagrocki, 1996 U.S. Dist. LEXIS 18635, *1, *4-5 (E.D.Pa. 1996); 42 Pa. C.S. § 5944. See also Lovegrove-Geise Dep. at p. 7 (noting

---

[2] These communications were also protected under the Americans With Disabilities Act. See Ballard v. Healthsouth Corp., 147 F.Supp.2d 529, 534 (N.D.Texas, Dallas Div. 2001) (discussing provisions of 42 U.S.C. § 12112(d)).

3

that "[a]ll information" recounted to EAP counselors was to be "held in confidence").

In <u>Jaffee v. Redmond</u>, the Supreme Court recognized, for the first time, the applicability of the psychotherapist-patient evidentiary privilege to federal cases and upheld the Seventh Circuit's holding which excluded the admission of notes of a police officer's counseling sessions with a social worker into evidence in a civil suit brought under 42 U.S.C. § 1983.  The Court concluded that, since all fifty states had already adopted some form of the psychotherapist-patient privilege (<u>see</u>, <u>e.g.</u>, 42 Pa. C.S. § 5944), recognition of the privilege in federal cases was also appropriate under Rule 501 of the Federal Rules of Evidence.[3]  <u>Jaffee</u>, <u>supra</u>, 518 U.S. at 8-10, 116 S. Ct. at 1927-28, 135 L.Ed.2d at 343-44.  In so holding, the Court reasoned:

> Effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.  Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace.  For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

---

[3] FED. R. EVID. 501 provides:  Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

4

Id. at 10, 116 S. Ct. at 1928, 135 L.Ed.2d at 345.

Subsequently, on the basis of Jaffee, the courts of the Third Circuit, as well, have recognized the appropriateness of enforcing the psychotherapist-patient evidentiary privilege in federal lawsuits.  See, e.g. Pearson v. Miller, 211 F.3d 57, 66-67, 2000 U.S. App. LEXIS 8072, **1, ** 21(3rd Cir. 2000); Siegel v. Abbottstown Borough, 2004 U.S. Dist. LEXIS 1284, *1, *8-9 (M.D. Pa. 2004); United States v. Ellis, 2003 U.S. Dist. LEXIS 9729, *1, *13 (E.D. Pa. 2003); Barrett v. Vojtas, 182 F.R.D. 177, 179 (W.D. Pa. 1998); Greet v. Zagrocki, 1996 U.S. Dist. LEXIS 18635, *1, *4-5 (E.D.Pa. 1996).

In Greet v. Zagrocki, the district court held that Employee Assistance Program (EAP) files documenting the counseling sessions of defendant police officer Joseph Zagrocki were protected from disclosure by the federal psychotherapist-patient evidentiary privilege fashioned in Jaffe.  Id.  So, too, this Court should hold that Defendants are barred from introducing any evidence of Plaintiff's allegedly threatening comments regarding Kevin Pennington, on the ground that they were communications to her therapist and so are protected from disclosure.

## II. PLAINTIFF HAS NOT WAIVED HER PSYCHOTHERAPIST-PATIENT PRIVILEGE AND LOVEGROVE-GEISE HAD NO 'DUTY TO WARN'

Although the Supreme Court in Jaffee noted that, "[l]ike other testimonial privileges, the patient may of course waive the protection [of the psychotherapist-patient confidentiality privilege]," Jaffee, supra, 518 U.S. at 15 n. 14, 116 S.Ct. at 1931 n. 14,

5

135 L.Ed.2d at 348 n. 14, that is not what happened here.

Here, Agere's Employee Assistance Manager, Susan Lovegrove-Geise, unilaterally violated Plaintiff's expectation of privacy in her therapeutic communications, on the ground that she felt she had a "duty to warn" Pennington of Plaintiff's allegedly threatening statements. See Lovegrove-Geise Dep. at p. 38. Were that true, Plaintiff might arguably be deemed to have waived her right to confidentiality in her therapeutic communications. See Jaffee, supra, 518 U.S. at 18 n. 19, 116 S. Ct. at 1932 n. 19, 135 L.Ed.2d at 349 n. 19.

However, a duty to warn a third party does not arise unless there is "an immediate, known and serious risk of potentially lethal harm" to a known third party by the patient. Emerich v. Philadelphia Ctr. for Human Dev., 554 Pa. 209, 224, 720 A.2d 1032, 1039 (S.Ct. 1998).[4] Defendants are hard-pressed to argue that Plaintiff posed such a threat on October 1, 2001, when Lovegrove-Geise informed Kevin Pennington of Plaintiff's alleged statements.

First, and perhaps most obviously, if there *had* been such an "immediate" threat to Pennington's life so as to trigger a duty to warn on October 1st, the same duty to warn

---

[4] Although federal law defines the parameters of the psychotherapist-patient evidentiary privilege in this litigation, Pearson, supra, 211 F.3d at 61, 2000 U.S. App. LEXIS *8072 at *4, this Court should nevertheless look to relevant Pennsylvania state law for guidance in determining those parameters. Id. at 67, 2000 U.S. App. LEXIS *8072 at *24. See also Ellis, supra, 2003 U.S. Dist. LEXIS 9729 at * 18 n. 6; Barrett v. Vojtas, supra, 182 F.R.D. at 179-80.

would have been triggered on August 21st, by Plaintiff's alleged statement that she had bought a gun and one hundred bullets and "they have Kevin Pennington's name on them." Gordy Dep. at p. 32. The fact that Lovegrove-Geise did *not* act on the alleged threat of August 21st belies her claim that she disclosed the alleged threat of October 1st on the basis of a duty to warn Pennington of an *immediate* risk to his person.[5] Significantly, in this regard, the Pennsylvania Supreme Court has held:

> [I]n light of the relationship between a mental health professional and patient, a relationship in which often vague and imprecise threats are made by an agitated patient as a routine part of the relationship, [we believe] that only in those situations in which a specific and immediate threat is communicated can a duty to warn be recognized. . . .We are cognizant of the fact that the nature of therapy encourages patients to profess threats of violence, few of which are acted upon. Public disclosure of every generalized threat would vitiate the therapist's efforts to build a trusting relationship necessary for progress.

Emerich, supra, 554 Pa. at 226, 720 A.2d at 1040-41.

In Emerich, a duty to warn was triggered when a patient telephoned his counselor and told him that he was going to kill his ex-girlfriend, then reiterated this intention during a therapy session later the same day and further specified that he would do so that day when his ex-girlfriend had scheduled to remove clothing from their former residence.

---

[5] Although Lovegrove-Geise denies receiving any such phone call from Gordy in August 2001, see Lovegrove-Geise Dep. at pp. 23, 52-53, Gordy's patient notes record in detail the substance of her August 21st and August 22nd conversations with Lovegrove-Geise regarding Dr. Bailey's purchase of a gun. See Gordy Exh. 1, notes for Aug. 21, 2001 and Aug. 22, 2001.

7

Id. at 214-15, 720 A.2d at 1035.  By contrast, here, Lovegrove-Geise acknowledges that Plaintiff never volunteered such an explicitly threatening statement; rather, according to Lovegrove-Geise, when asked whether she could promise not to "harm" Pennington, Plaintiff answered that she could not.  See Lovegrove-Geise Dep. at pp. 35-36.

Of course, Plaintiff denies *ever* having made such a statement.  See id. at 37.  But even if she had, a refusal to state affirmatively that she would not somehow "harm" Pennington hardly constitutes the sort of specific threat that might trigger a duty to warn, particularly given the fact that Plaintiff had already brought a civil suit against Defendants and thus, might well have felt she had *already* harmed Pennington, albeit professionally.  Moreover, Lovegrove-Geise had been informed, in August, that Plaintiff's husband had assured Gordy that Plaintiff did not have access to the gun.  See Gordy Dep. at pp. 33-35.  Certainly, then, the alleged threat of October 1st fell far short of the relative specificity of the August 21st statement – a statement Lovegrove-Geise obviously did *not* believe triggered a duty to warn Pennington.

Moreover, in accordance with its holding that "the circumstances in which a duty to warn a third party arises are extremely limited," Emerich, supra, 554 Pa. at 226, 720 A.2d at 1040, the Pennsylvania Supreme Court cautioned mental health practitioners to adhere to the code of ethics promulgated by the State Board of Psychology:

> Because these [duty-to-warn] measures should not be taken
> without careful consideration of clients and their situation,
> consultation with other mental health professionals should

> be sought whenever there is time to do so to validate the
> clinical impression that the threat or intent of harm is likely
> to be carried out.
>
> 49 Pa. Code § 41.61.

Id. at 229-30, 720 A.2d at 1042.  Here, however, Lovegrove-Geise consulted *none* of the other doctors or therapists treating Plaintiff before singlehandedly deciding that, on *this* occasion, a duty to warn Pennington had been triggered.[6]  Had she done so, she would have learned that *none* of them, including Gordy, believed Plaintiff to be a threat to Pennington.  See Gordy Dep. at p. 67; Deposition of Richard Goy, M.D., dated July 29, 2003, at pp. 28-29; Deposition of Hugo N. Twaddle, M.D., dated July 29, 2003, at pp. 20-22.  Similarly, had she telephoned Plaintiff's husband, as Gordy had previously done, she would have learned that Plaintiff *continued* to have no access to the gun.  See Deposition of Dr. Garnell Bailey, dated March 28, 2003, at pp. 140- 41.

In a nutshell, Lovegrove-Geise utterly failed to investigate whether a sound basis existed for violating Plaintiff's right to confidentiality and, in so doing, failed to adequately protect Plaintiff's psychotherapist-patient privilege.  Cf. Emerich, supra, 554 Pa. at 234-35, 720 A.2d at 1044.  As the Court in Emerich noted, "This consideration of the reasonableness of the warning under the circumstances is eminently sound as different

---

[6] Although Lovegrove-Geise testified that she consulted with Gordy before telling Pennington of the alleged threat, and Gordy "was in agreement that there was a threat," Lovegrove-Geise Dep. at p. 40, Gordy testified that Lovegrove-Geise only telephoned her *after* revealing the alleged threat to Pennington, and Agere's own Disability Case Management worksheet supports that conclusion.  See Gordy Dep. at pp. 39-40.

9

warnings, depending upon the attendant circumstances in each case, may be given to *maintain patient confidentiality*, and, at the same time, to prevent serious bodily harm." Id. (emphasis supplied). Where, as here, a cursory investigation would have revealed that there was no "serious bodily harm" to prevent, it cannot be said that a reasonable professional in Lovegrove-Geise's position "should [have] determine[d] under the standards of the mental health profession, that [her] patient present[ed] a serious danger of violence to the third party" triggering a duty to warn and a concomitant obliteration of Plaintiff's psychotherapist-patient confidentiality privilege. See id. at 231-32, 720 A.2d at 1043.

In the absence of an evidentiary privilege, evidence of employee misconduct involving violence is generally admissible to establish a legitimate basis for terminating an employee. See Davis v. City of Philadelphia Water Dep't, 57 Fed. Appx. 90, 92, 2003 U.S. App. LEXIS 1760, *1, *4 (3rd Cir. 2003) (employee's inappropriate remarks were directed *at* his supervisor -- not to a mental health care professional for the purpose of defusing the employee's frustration); Phillips v. Union Pac. R.R., 216 F.3d 703 (8th Cir. 2000) (employee's threats were not made within the context of a protected therapeutic relationship); Jones v. American Postal Workers Union Nat'l, 192 F.3d 417, 420 (4th Cir. 1999) (employee communicated his intent to kill his supervisor to his superior); Dose v. Buena Vista Univ., 229 F. Supp.2d 910, 915-16 (N.D. Iowa 2002) (employee made threatening statement while discussing his disability check with member of human

resources department and with work-study student present); <u>Hugley v. Art Institute of Chicago</u>, 3 F. Supp.2d 900, 902 (N.D. Ill. 1998) (employee threatened co-worker during confrontation). However, where a party asserts the psychotherapist-patient privilege, evidence protected by that privilege is inadmissible absent a valid showing of waiver of the privilege. <u>See</u> <u>Greet</u>, <u>supra</u>, 1996 U.S. Dist. LEXIS 18635 at *4-5. <u>Cf.</u> <u>Siegel</u>, <u>supra</u>, 2004 U.S. Dist. LEXIS 1284 at *9-10 (psychotherapist-patient privilege waived where plaintiff underwent psychological testing with full knowledge that test results would be reported to police department).

It is irrelevant that Defendants wish to interpose this evidence to argue that they had a legitimate, nondiscriminatory reason for firing Plaintiff. The Supreme Court has already rejected a "balancing approach" in cases such as these, holding that "it is inappropriate to allow the privilege to be overcome in cases where the evidentiary need for the privileged information is substantial." <u>Greet</u>, <u>supra</u>, 1996 U.S. Dist. LEXIS 18635 at *4-5 (<u>discussing</u> <u>Jaffee v. Redmond</u>, <u>supra</u>, 518 U.S. at 17-18, 116 S. Ct. at 1932, 135 L.Ed.2d at 349). Thus, in the absence of credible evidence establishing that either Plaintiff waived her psychotherapist-patient privilege or Lovegrove-Greise properly disclosed Plaintiff's privileged communications in discharging a legitimate 'duty to warn,' this Court should exclude all evidence of Plaintiff's alleged threats against Pennington, as they were made in a purely therapeutic context.

Finally, to the extent that this Court finds that there remains some question as to

11

whether Lovegrove-Geise had a duty to warn Pennington of Plaintiff's alleged threats, "the existence of a duty is a question of law" to be resolved by this Court prior to trial. Emerich, 554 Pa. at 233, 720 A.2s at 1044. For this reason, Plaintiff requests, in the alternative, that this Court grant a hearing to determine whether such a duty to warn existed.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court exclude from trial all evidence of Plaintiff's allegedly threatening remarks pertaining to Kevin Pennington, on the ground that they were protected from disclosure by a psychotherapist-patient evidentiary privilege. In the alternative, Plaintiff requests a hearing for purposes of establishing that she has not waived her psychotherapy-patient evidentiary privilege.

    Respectfully submitted,

_____
GLENNIS L. CLARK
I.D. No. 36682
Counsel for Plaintiff
LAW OFFICES OF GLENNIS L. CLARK
1908 Allen Street
Allentown, PA 18104
(610) 433-6624