IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARNELL BAILEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 02-4683 |
| | : | |
| v. | : | |
| | : | Judge James Knoll Gardner |
| LUCENT TECHNOLOGIES INC. | : | |
| and AGERE SYSTEMS INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' SUMMARY OF FACTS AND LEGAL CONTENTIONS**

Defendants Lucent Technologies Inc. ("Lucent") and Agere Systems Inc. ("Agere"), through their undersigned counsel, submit this Summary of Facts and Legal Contentions pursuant to the Court's October 20, 2003 Order.

**I.   BRIEF STATEMENT OF THE FACTS**

Plaintiff, Garnell Bailey ("Bailey"), worked for Agere and it predecessors, Lucent and AT&T Corporation, from 1982 until her termination on December 9, 2001.  From 1997 to 2000, Bailey was a Senior Manager in human resources.  In August 2000, Dewayne Rideout, Bailey's supervisor, told her that he was promoting her from Senior Manager to Director, although he never completed the process required for doing so.  At that time, Bailey's salary was increased by $10,000 to $113,000.  She received an additional increase to $118,500 at the end of 2000.  In February 2001, Agere hired Kevin Pennington ("Pennington") as its Senior Vice President of Human Resources.  As part of his reorganization of Agere's human resources structure, Pennington offered Bailey the position of Director of Diversity and Business Ethics.

As part of its initial public offering, Agere awarded stock options to employees in March 2001.  Agere's published guidelines suggested a grant of 15,000 – 25,000 options for Senior Managers.  Bailey received 30,000 options.  Bailey went on short-term disability leave on June 8, 2001.  Pennington never had the opportunity to determine Bailey's salary for her new position, because she was terminated upon her release to return to work because of threats she made toward Pennington.  Other Directors in the new human resources organization had their salaries set at various levels, depending on their duties, qualifications and experience.

On August 21, 2001, Bailey called her therapist, Patricia Gordy ("Gordy").  Bailey told Gordy that she had bought a gun and a hundred bullets that "have Kevin Pennington's name on them."  Gordy felt that she had a professional duty to warn, and called Bailey's husband to report the threat.  Bailey made another threat toward Pennington on October 1, 2001, when she told Susan Lovegrove-Geise, who managed Agere's Employee Assistance Program ("EAP"), that she had bought a gun and "I cannot tell you that I would not harm Kevin Pennington."  Lovegrove-Geise felt that she had a professional duty to warn, and reported this threat to Pennington and to

Agere's Security department.   As a result of Bailey's threat, Agere terminated Bailey's employment upon her return to work from disability leave on December 9, 2001.

## II.    DEFENDANTS' LIABILITY CONTENTIONS

Bailey claims that Agere discriminated against her based on her race and sex with respect to her compensation, particularly her salary and stock options.  She also alleges that Agere discriminated against her based on her race, sex and disability and in retaliation for filing a charge of discrimination with the EEOC by terminating her employment.  Agere denies that it treated Bailey differently with regard to her compensation than it treated similarly situated white and male employees.  Agere also denies that it terminated Bailey because of her race, sex or disability, or because she filed a charge of discrimination with the EEOC.  Rather, Agere terminated Bailey because she made threats toward her supervisor, Kevin Pennington.

## III.    DEFENDANTS' DAMAGES CONTENTIONS

Defendants deny that Bailey is entitled to any damages. However, if Bailey is successful at trial on her race and sex discrimination claims related to her compensation, she is entitled to the difference in pay between her salary and that of white or male Directors performing equal work from the time the discrimination began until the time of her termination.  If Bailey is successful at trial on her race and sex discrimination claims related to her stock option grant she is entitled to no monetary damages, as those stock options currently have no value.

If Bailey is successful on any of her termination claims at trial, she can only collect damages representing her loss of income from the date she was terminated until the date on which she should have found substantially equivalent employment.  Defendants are also entitled to offset any amounts Bailey has earned form her current employment, and to cut off or reduce damages if Bailey stopped searching for substantially equivalent employment.  Defendants' expert estimates Bailey's lost wages to range from $149,285.00 to $187,613.00.

Bailey also claims that she is entitled to compensatory and punitive damages.  Defendants deny that Plaintiff suffered any injuries that would entitle her to compensatory damages.  Defendants also deny that they acted with malice or reckless indifference to Bailey's federally protected rights.  Accordingly, Bailey is not entitled to compensatory or punitive damages.

    Respectfully submitted,

/s/ Theodore A. Schroeder
Robert W. Cameron  (PA I.D. No. 69059)
Theodore A. Schroeder  (PA I.D. No. 80559)
LITTLER MENDELSON, P.C.
Dominion Tower
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
(412) 201-7600

Dated: March 12, 2004                                    Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that on this 12th day of March, 2004, a true and correct copy of the foregoing Defendants' Summary of Facts and Legal Contentions was caused to be served via Federal Express, postage prepaid, upon:

> Glennis L. Clark, Esquire
> 1908 W. Allen Street
> Allentown, PA  18104

/s/ Theodore A. Schroeder

Pittsburgh:34964.1 042480.1004