IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

GARNELL BAILEY,                          :
                                         :
              Plaintiff,                 :        Civil Action No. 02-4683
                                         :
       v.                                :
                                         :        Judge James Knoll Gardner
LUCENT TECHNOLOGIES INC.                 :
and AGERE SYSTEMS INC.,                  :
                                         :
              Defendants.                :

## DEFENDANTS' OBJECTIONS TO
## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Defendants, Lucent Technologies Inc. and Agere Systems Inc., through their counsel,

object to Plaintiff's Proposed Jury Instructions.

## I.      Objection to Plaintiff's Failure to Comply With This Court's Order

This Court's October 20, 2003 Order established a three-tier process for submitting

proposed jury instructions in this case:  (1) the parties were required to serve proposed

instructions upon each other by February 23, 2004; (2) the parties were to submit agreed upon

jury instructions by March 1, 2003 and (3) the parties were to submit supplemental jury

instructions, which were not agreed upon, by March 5, 2004.  (10/20/03 Order at 3).  Clearly, the

procedure established by this Court contemplates that parties will only submit supplemental jury

instructions which have been proposed to, and rejected by, the other party.

Notwithstanding this framework, only Defendants served proposed jury instructions on

February 23, 2004, and the parties' Joint Proposed Instructions were based entirely upon

Defendants' proposed instructions (and Plaintiff's suggested edits to those instructions).  The

first time Defendants saw Plaintiff's proposed supplemental instructions was when they were

served on March 5, 2004.  Defendants had no opportunity to agree to, propose modifications to

or reject those instructions prior to that time.  This Court should therefore reject Plaintiff's

Proposed Jury Instructions, which were not presented to Defendants in the manner required by

the Court's October 20, 2003 Order.

## II.    <u>Objections to the Substance of Plaintiff's Proposed Jury Instructions</u>

The grounds for Defendants' objections are set forth after each of Plaintiff's proposed

requested instructions. [1]

---

[1]  For clarity, Defendants have used bold text to identify objectionable material in Plaintiff's
proposed instructions, except where the instruction is objectionable in its entirety.

**No. 1 – Burden of Proof**

The party with the burden of proof on any given issue has the burden of proving every disputed element of his claim to you by a preponderance of the evidence.  If you conclude that the party bearing the burden of proof has failed to establish his claim by a preponderance of the evidence, you must decide against her on the issue you are considering.

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of any witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party having this burden of proof.  That is because the party bearing this burden must prove more than simple equality of evidence – he must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof -- that what the party claims is more likely true than not true -- then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this and you should put it out of your mind.

**Objection:**

Defendants contend that, where possible, procedural issues should be covered using model instructions.  Therefore, although nothing in Plaintiff's proposed instruction no. 1 is legally objectionable, Defendants contend that their supplemental instruction no. 1, which is taken from the most recent edition of <u>Federal Jury Practice and Instructions</u>, is more suitable.

**No. 2 – Finding of Fact**

Any finding of fact you make must be based on probabilities, not possibilities. It may not

be based on surmise, speculation or conjecture.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 2 as confusing. The concepts contained therein are better explained in the parties' joint instruction no. 5, Evidence – Direct and Circumstantial.

**No. 3 – Direct and Circumstantial Evidence**

There are two types of evidence, which you may properly use in reaching your verdict.

On type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own sense -- something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is within the document.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used by the court.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella, which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts, which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence of non-existence of some other facts.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

**<u>Objection</u>:**

Defendants object to Plaintiff's proposed instruction no. 3 as redundant.  The parties have already agreed to an instruction on direct and circumstantial evidence, joint instruction no. 5.

**No. 4 – Statements by Patient to Doctor**

You have heard the testimony of _____, a physician concerning statements made by Ms. Bailey, who was a patient, for the purpose of facilitating medical diagnosis or treatment. These statements included description so the patient's medical history and symptoms and the general cause of her illness. You may consider these statements as evidence of the facts stated. It is up to you, the jury, to decide what weight, if any, to give these statements, just as you would any other evidence.

**Objection:**

Plaintiff's proposed instruction no. 4 is objectionable because it instructs the jury on the standards for admissibility of statements by Ms. Bailey to her doctors. See Fed R. Evid. 803(4) (exception to hearsay rule for statements for the purpose of medical diagnosis or treatment). The jury need not be instructed on this issue, however, because the decision of admissibility is a question for the Court. Fed. R. Evid. 104(a). If the Court deems them admissible, statements by Ms. Bailey to her doctors should be treated no differently than any other evidence. Therefore, no special instruction regarding such statements is necessary.

## No. 5 – Interrogatories

You have heard and seen evidence in this case, which is in the form of interrogatories.

Interrogatories are written questions posed by one side, which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories **as evidence against a party who made the answer**, just as you would any other evidence, which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers, which have been admitted as evidence.

## Objection:

Defendants object to Plaintiff's requested instruction no. 5, because it inaccurately suggests that interrogatory answers may be used only *against* a party who made them. To the contrary, although a party is bound by its interrogatory answers, those answers may be used as evidence for or against the party. This concept is better explained by the proposed instruction for Answers to Interrogatories contained in O'Malley, Grenig and Lee, Federal Jury Practice and Instructions § 104.72 (5th ed. 2000):

> Each party has introduced into evidence certain interrogatories—that is, questions together with answers signed and sworn to by the other party. A party is bound by its sworn answers.

> By introducing an opposing party's answers to interrogatories, that party does not bind itself to those answers. The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

Should the Court deem it necessary to instruct the jury on interrogatory answers, Defendants contend that the proposed instruction from Federal Jury Practice and Instructions is more appropriate than the instruction Plaintiff requested.

**No. 6 – Inference**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The Plaintiff asks you to draw one set of inferences, while the defense asks you to draw under. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw -- but not required to draw -- from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Objection:**

Although nothing in Plaintiff's proposed instruction no. 6 is legally objectionable, Defendants object to the instruction as redundant of the parties' proposed joint instruction no. 5 on direct and circumstantial evidence.

**No. 7 – Witness Credibility**

You have had the opportunity to observe all the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies?  You watched the witness testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his demeanor – that is, his carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

11

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

**<u>Objection</u>:**

Defendants object to Plaintiff's proposed instruction no. 7 as redundant.  The parties have already agreed to joint instruction no. 6 on credibility of witnesses.

**No. 8 – Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection, which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his testimony.  In short, if you find that a witness is biased, you should view his testimony with caution, weight it with care and subject it to close and searching scrutiny.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 8 because the issue of bias is covered in the parties' joint instruction no. 6 on credibility of witnesses.  Therefore, the requested instruction is redundant and unnecessary.

**No. 9 – Discrepancies in Testimony**

**You have heard evidence of discrepancies in the testimony of certain witnesses,** and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. **It is also a fact that two people witnessing an event will see or hear it differently.** Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

**Objection:**

Defendants object to bold sections of Plaintiff's requested instruction no. 9, because they make improper assumptions about the nature of the evidence that will be introduced in this case. Defendants also believe the instruction is unnecessary, because its substance is covered by instructions on credibility and impeachment proposed by the parties.

## No. 10 – Impeachment by Prior Inconsistent Statements

**You have heard evidence that at some earlier time the witness has said or done something which counsel agrees is inconsistent with the witness' trial testimony.**

**Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability**.  Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

**It is exclusively your duty**, based upon all the evidence and your own good judgment, **to determine whether the prior statement was inconsistent**, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

## Objection:

Defendants object to Plaintiff's proposed instruction no. 10, because it is internally inconsistent and makes improper assumptions about the nature of the evidence that will be introduced in this case.  Defendants contend that their supplemental instruction no. 2, which is taken from Federal Jury Practice and Instructions, is a more suitable instruction on impeachment.

15

**No. 11 – Expert Witnesses**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.  Such testimony is presented to you because someone who is experienced and knowledgeable in a particular field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence of this case.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 11, because it fails to adequately explain the criteria the jury should apply in deciding whether to credit expert testimony, as set forth in Federal Rules of Evidence 702 – 705.  A more detailed explanation of these criteria are contained in Defendants' supplemental instruction no. 4, which is derived from three model instructions:  (1) the most recent edition of <u>Federal Jury Practice and Instructions;</u> (2) Eleventh Circuit Pattern Jury Instructions: Civil Cases and (3) Pattern Jury Instructions of the District Judges Association of the Fifth Circuit.

**No. 12 – Intentional Discrimination – Title VII**

One of the Plaintiff's claims is based upon a law first enacted by Congress in 1964, and amended several times since then. That law is known as Title VII of the Civil Rights Act of 1991, and is often referred to as "Title VII." Two provisions of Title VII are relevant here and read as follows:

It shall be an unlawful employment practice for an employer.

(1)    to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin.

(2)    To retaliate against any employee or applicant for employment for asserting their rights under the statute.

**Objection:**

Although Defendants have no legal objection to Plaintiff's proposed instruction no.12, Defendants consider it unnecessary to read the statutes at issue to the jury. The standards under which the jury will decide Plaintiff's race and sex discrimination and retaliation claims will be set out in detail in subsequent instructions. Reading the statute tells the jury nothing about how to decide the case and, instead, may result in confusion. Moreover, item (2) is not the actual anti-retaliation provision of Title VII, but merely paraphrases it. See 42 U.S.C. § 2000e-3(a).

**No. 13 – Disparate Treatment**

An unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a determinative factor for any employment decision, even though other factors also motivated the decision. A "motivating factor" is a factor that played a part in Defendant's employment decision.

Your verdict must be for the Plaintiff and against the Defendants on Plaintiff's race discrimination claim if all the following elements have been proved by the preponderance of the evidence:

First, Defendants **failed to promote, placed plaintiff on the performance improvement plan, transferred and ultimately terminated** the Plaintiff; and

Second, Plaintiff's race was a motivating factor in Defendants' decisions.

If either of the above elements has not been provided by the preponderance of the evidence, your verdict must be for the Defendants and you need not proceed further in considering this claim.

If you find that the above elements have been proved, you may award damages based upon my instructions.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 13 because it improperly states the standard for a disparate treatment claim using the "pretext" analysis. In a "pretext" case, it is not proper to ask whether race was a "motivating" factor in the decision; instead, the question is whether race was a "determinative" factor. Watson v. SEPTA, 207 F.3d 207, 220 (3d Cir. 2000). Defendants' proposed instruction no. 15 more appropriately sets forth the standard for a pretext case, as established by the Supreme Court in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

The Court may also instruct the jury alternatively on the mixed motive theory of recovery, see Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003). However, the mixed motive alternative instruction, if given, should be an alternative to the pretext analysis used at the third step in the McDonnell Douglas burden shifting framework. Lloyd v. City of Bethlehem, No. 02-

CV-00830, slip. Op. at 11-12 (E.D. Pa. Mar. 1, 2004) (Gardner, J.) (citing <u>Dunbar v. Pepsi-Cola Gen. Bottlers</u>, 285 F. Supp. 2d 1180 (N.D. Iowa 2003)).

Defendants also object to the bold portion of Plaintiff's proposed instruction no. 13, which does not properly describe Plaintiff's claims in this case.

**No. 14 – Gender and Race Discrimination – Title VII**

First, I will address Ms. Bailey's complaint of race and gender discrimination. Ms. Bailey claims that Agere discriminated against her because of her gender and her race. Specifically, Ms. Bailey asserts that Agere improperly considered her gender and the fact that she is an **African-American female** and her race when denying her stock options, paying her differently than white males and terminating her.

To meet her burden of proving that she was discriminated against by Agere on the basis of her gender and race, Ms. Bailey must prove by a preponderance of the evidence that she suffered adverse employment actions that give rise to an inference of discrimination. If Ms. Bailey fails to prove all of these elements, then your verdict must be for the Defendant. If, however, Ms. Bailey proves all of these elements, then your analysis does not end there.

Agere has articulated reasons for taking adverse actions against Ms. Bailey.

By offering an explanation for its decisions, the Defendants have shifted the burden of persuasion back to the Plaintiff, to show, by a preponderance of the evidence, that the reasons offered by Agere are false, or are a pretext for discrimination. Ms. Bailey may meet this burden of proof either by persuading you that a discriminatory reason more likely than not motivated the Defendant or by persuading you that the Defendant's proffered explanation is unworthy of belief.

Ultimately, you must decide, as to each of Ms. Bailey's claims, whether her status as a female, **as an African-American female** and as an African-American was a determining factor in Agere's employment decisions. This does not mean that Ms. Bailey must prove that her status as a female, **as an African-American female** or as an African American was the sole or exclusive reason for Agere's actions. However, she must prove, by a preponderance of the

evidence, that "but for" the Plaintiff's sex (gender) and race, Agere would not have treated her the way it did.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 14 because it misstates the standard that Plaintiff must meet to prevail at the pretext stage on her race and sex discrimination claims. In order to prevail on her race and sex discrimination claims, Plaintiff "must convince the finder of fact *both* that the [Defendants' stated] reason was false, and that discrimination was the real reason." Jones v. School Dist., 198 F.3d 403, 412-13 (3d Cir. 1999) (emphasis in original, citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)); see also Reeves v. Sanderson Plumbing, 530 U.S. 130 (2000). Therefore, Plaintiff's instruction misstates the law when it says that Plaintiff may be successful by proving *either* that race was the motivating factor behind Defendants' decisions *or* that Defendants' stated reasons for their actions are unworthy of belief. Defendants also object as redundant and confusing the references to Plaintiff's status as an "African-American female."

Moreover, to the extent the Court chooses to give an alternative "motivating" factor instruction based on the "mixed motive" theory, it must then instruct the jury that Bailey may not recover damages if Agere proves that it would have made the same decision in the absence of the impermissible motivating factor. 42 U.S.C. § 2000e-5 (q)(2)(B).

Finally, Defendants object to the second and third paragraphs of Plaintiff's requested instruction no. 14. Although these paragraphs properly set forth the first two steps – prima facie case and legitimate, non-discriminatory reason – of the burden-shifting analysis applicable here, these issues are not in dispute. Defendants do not dispute that Plaintiff has established a prima facie case of race or sex discrimination, and Plaintiff – as the text of the third paragraph concedes – does not dispute that Defendants have offered legitimate, non-discriminatory reasons for their actions. Therefore, to simplify matters for the jury, Defendants submit that the Court should instruct only on the pretext analysis. This is the method employed by Defendants' proposed instruction no. 15, which also properly states the law to be applied at the pretext stage.

## No. 15 – Plaintiff's Claims Under Americans With Disabilities Act

**The purpose of the Americans with Disability Act is to eliminate employment discrimination against individuals with disability.  The Act makes it unlawful for an employer intentionally to discriminate against an employee because of the person's disability.  The Act also requires an employer to make reasonable accommodations to an employee's disability, so long as such accommodations does not impose an undue hardship on the operations of the business.**

Ms. Bailey claims that she is disabled within the meaning of the Americans with Disabilities Act, **and that she has a record of and is regarded as having a physical or mental impairment that substantially limits one or more of her major life activities**.  Defendant denies that Plaintiff is disabled.

Ms. Bailey contends that she was unjustifiably terminated by Defendant.  **Plaintiff further contends that with reasonable accommodation she could have performed the essential functions of the director, human resources position.**

Defendant denies that is unjustifiably terminated Plaintiff **and claims that there was no reasonable accommodation it could have made without undue hardship that would have permitted the Plaintiff to perform the essential functions of the director position.**

## Objection:

Defendants object to Plaintiff's proposed instruction no. 15 for two reasons.  First, it is unnecessary to instruct the jurors on the purpose underlying the Americans With Disabilities Act, as such considerations have no place in the jury's decision-making process.  Second, the instruction improperly characterizes Bailey's claims.  Bailey has not claimed that she has a record of a disability, nor that she is regarded as disabled.  Bailey has also not contended that she requested and was denied a reasonable accommodation for any physical or mental limitation.  Therefore, Defendants object to the bold sections of Plaintiff's proposed instruction no. 15.

**Instruction No. 16 – Burden of Proof ADA**

Plaintiff has the burden of proving each of the following propositions by a preponderance of the evidence:

(1)    That Ms. Bailey **has a record of** a physical or mental impairment that substantially limits one or more major life activities.

(2)    That she was qualified for the position of director since she satisfies the skill, experience, education and other job-related requirements for the position;

(3)    That she can perform the essential functions of the position of director with reasonable accommodation and;

(4)    That her disability was a **motivating factor** in the Defendant's decision to terminate her.

Plaintiff is not required to prove that her disability was the sole motivation or the primary motivation for Defendant's decision.  The Plaintiff needs to prove only that her disability **played a part** in the decision.  In addition, Plaintiff is not required to produce direct evidence of unlawful motive.  Intentional discrimination is seldom admitted, but is a fact that you may infer from the existence of other facts.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 16, because it fails to properly set forth the standards of proof applicable to Ms. Bailey's ADA claim.  These standards are set forth, with supporting authority, in Defendant's supplemental instruction nos. 10-12.  Defendants also object to the reference to Plaintiff's record of impairment, as she has made no such claim in this case.

**Instruction No. 17 – Burden of Proof ADA.  Reasonable Accommodation**

Plaintiff has the burden of proving each of the following propositions by a preponderance of the evidence:

(1)    That Ms. Bailey has a record of a physical or mental impairment that substantially limits one or more major life activities;

(2)    That she was qualified for the position of director since she satisfies the skill, experience, education and other job-related requirements for the position;

(3)    That she can perform the essential functions of the position of director with reasonable accommodation;

(4)    That Defendant knew an accommodation was necessary; and

(5)    That Defendant failed to make reasonable accommodation to her disability.

If you find that Plaintiff has proved these propositions, then must find for the Plaintiff unless Defendant proves, by a preponderance of the evidence, one of the following propositions:

(1)    There was no accommodation the Defendant could make that would enable Plaintiff to perform the essential functions of the job; or

(2)    The possible accommodation would impose an undue hardship on the operation of the Defendant's business.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 17 because Plaintiff has admitted she never requested an accommodation for any alleged disability.  (Bailey Dep. at 245-46).  Therefore, there is no failure to accommodate claim in this case.  Coneen v. MBNA Am. Bank, 334 F.3d 318, 330 (3d Cir. 2003) (no duty to accommodate until employer has sufficient notice that employee is requesting accommodation).

**Instruction No. 18 – ADA – Major Life Activities**

The term "major life activities" refers to **basic life** activities **that an average person can perform with little or no difficulty**, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting and reaching.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 18, because the EEOC regulations cited by Plaintiff do not define "major life activities" by reference to whether an average person can perform an activity "with little or no difficulty." 29 C.F.R. § 1630.2(i). The remainder of the instruction is similar to language contained in Defendant's supplemental instruction no. 11.

**Instruction No. 19 – ADA – Mental or Physical Impairment**

The term "mental or physical impairment" is defined as:

(1)    Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological; neuromuscular; special sense organs; cardiovascular; reproductive; digestive, genito-urinary; hemic and lymphatic; skin, or endocrine; or

(2)    Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

The determination of whether the Plaintiff has a physical or mental impairment should not be based on the impairment's name or diagnosis.  Rather, it depends on the effect the impairment has on the Plaintiff's life.  A condition that is not disabling for one individual may be disabling for another.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 19 as confusing and unnecessary.  Defendants do not dispute that Bailey had a mental impairment.  Instead, they dispute that impairment substantially limited her in a major life activity.  As a result, although subparagraphs 1 and 2 of Plaintiff's proposed instruction no. 19 are direct quotes from the EEOC regulations, they are unnecessary and unhelpful to the jury in this case.  Moreover, the statements in the last paragraph of proposed instruction no. 19, while true, are more applicable to the question of whether Bailey was substantially limited than to whether or not she had a mental or physical impairment.

**Instruction No. 20 – ADA – Impairment – Mitigating Measures**

The existence of an impairment is to be determined without regard to mitigating

measures, such as medicines, or assistive or prosthetic devices.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 20, which misstates the law.
Mitigating measures *are* to be considered when determining whether an individual's impairment
is substantially limiting. Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999).

**Instruction No. 21 – ADA – Substantially Limiting**

A physical or mental impairment "substantially limits" one or more of a person's major life activities when it:

(1)    Renders the Plaintiff unable to perform a major life activity that the average person in the population could perform; and

(2)    Significantly restricts, as to condition, manner or duration, the individual's ability to perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population could perform the same major life activity.

The question of whether the Plaintiff's impairment substantially limits a major life activity depends on the impairment's:

(1)    Nature and severity;

(2)    Duration or expected duration; and

(3)    Expected or actual permanent or long-term impact.

**Objection:**

Although Plaintiff's proposed instruction no. 21 incorporates the EEOC regulations defining a substantial limitation, it fails to include the separate definition for a substantial limitation in working or to incorporate the holding of the Supreme Court's decision in Toyota Motor Manufacturing, Kentucky v. Williams, 122 S. Ct. 681, 691 (2002). These concepts are contained in Defendants' supplemental instruction no. 11, which contains a more complete and accurate explanation of what constitutes a substantial limitation in a major life activity.

**Instruction No. 22 – ADA – Record of Impairment**

An individual has a record of an impairment if she has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. Many types of records might contain this information, including medical, educational, or employment records. An individual may thus be disabled within the meaning of the Act even if she has recovered from a physical or mental impairment that previously limited her in a major life activity.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 22, because Plaintiff has not claimed that Defendants discriminated against her based on a record of impairment. (Bailey Dep. at 252-53).

**Instruction No. 23 – ADA – Definition:  Regarded as Having an Impairment**

An individual is "regarded as" having a disability if she:

(1)    Has a physical or mental impairment that does not limit a major life activity, but is treated by the employer as causing such a limitation;

(2)    Has a physical or mental impairment that is substantially limited only because of the attitudes of others toward the impairment; and

(3)    Does not have an impairment at all but is regarded by the employer as having such a substantially limiting impairment.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 23, because Plaintiff has not claimed that Agere regarded her as disabled.  (Bailey Dep. at 252-53).

**Instruction No. 24 – ADA – Definition:  Reasonable Accommodation**

The term "reasonable accommodation" means modification to or adjustment of the work environment, or to the manner or circumstances under which a job is customarily held or performed.

Required reasonable accommodation may include:

- Making existing facilities used by employees readily accessible to and usable by individuals with disabilities;

- Job restructuring;

- Part-time or modified work schedules;

- Reassignment to a vacant position;

- Acquisition or modification of equipment or devices;

- Appropriate modifications of examinations, training materials or policies;

- The provision of qualified readers or interpreters; and

- Other similar accommodations for individuals with disabilities.

This is not exhaustive, but is intended to provide general guidance about the reasonable accommodation concept.

Reasonable accommodation is best understood as a means by which barriers to the equal employment opportunity of an individual with a disability are removed or alleviated.  Equal employment opportunity means an opportunity to attain the same level of performance or to enjoy the same level of benefits and privileges of employment as are available to the average similarly situated employee without a disability.

**<u>Objection</u>:**

       Defendants object to Plaintiff's proposed instruction no. 24, because Plaintiff has not claimed that she requested and was denied an accommodation, (Bailey Dep. at 63-67), nor has Agere asserted that, at the time she was terminated, Bailey was unable to perform her job with Agere with or without reasonable accommodation.

**Instruction No. 25 – ADA – Definition:  Essential Functions**

Essential functions are the fundamental duties of a position, as opposed to marginal functions of the position.  If the Plaintiff can perform the essential functions of the job, she cannot be denied a job because she cannot do things that are only marginal to the job.  To determine whether a function is essential to the job, you must consider:

(1)    Whether employees in the position are actually required to perform the function claimed to be essential.  If employees are not actually required to perform the function, it is not an essential function.

(2)    If a job function is actually being performed, the next consideration is whether removal of that job function would fundamentally change the job.  There are several reasons why a particular function might be considered essential:

(a)    The position exists to perform the function;

(b)    There are a limited number of other employees available to perform the function, or among whom the function can be distributed; and

(c )    A function is highly specialized and the person in the position is hired for special expertise or ability to perform it.

You may consider the following factors in determining whether a particular function is essential, as opposed to marginal: the employer's judgment as to which functions are essential; written job descriptions prepared before advertising for or interviewing applicants for the position; the amount of time the employee must spend performing the function; the consequences of not requiring the incumbent to perform the function; the work experience of past incumbents in the job; and the current work experience of incumbents in similar jobs.  No one factor should be given greater weight than another and you are not required to accept the

employer's judgment on this issue.  This list of factors is not all-inclusive and no greater weight

should be accorded those on the list than other types of evidence not included.

**<u>Objection</u>:**

 Defendants object to Plaintiff's proposed instruction no. 25 as unnecessary, as
Defendants do not claim that Bailey was unable to perform the essential functions of her job with
Agere at the time of her termination.

**Instruction No. 26 – ADA – Defense:  Threat to Safety**

If you find that the Plaintiff has established each of the elements of her claim, then you will consider the Defendant's defense, which the Defendant must establish by a preponderance of the evidence.  It is the Defendant's defense that the Plaintiff would pose a threat to the health or safety of others in the workplace.

You may find that the Plaintiff poses a direct threat only if the Defendant has proved, more likely than not, that Plaintiff poses a substantial risk to the health and safety of others in the work environment that cannot be eliminated or reduced by reasonable accommodation.

A significant risk is more than an elevated risk of injury on the job.  A significant risk is a specific risk having a high probability of imminent substantial harm.  In determining whether the Plaintiff poses a significant risk, you must consider the following factors:

(1)    The duration of the risk;

(2)    The nature and severity of the potential harm;

(3)    The likelihood that the potential harm will occur; and

(4)    The imminence of the potential harm.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 26 as irrelevant, because Defendants have not asserted a direct threat defense to Plaintiff's ADA claim.

**Instruction No. 27 – ADA – Definition:  Threat to "Imminent" Safety**

"Imminent" is defined as ready to take place or hanging threateningly over one's head.  A risk of future injury is not an imminent threat.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 27 as irrelevant, because Defendants have not asserted a direct threat defense to Plaintiff's ADA claim.

**Instruction No. 28 – ADA – Threat to Safety Defense – Consideration of Testimony of Experts and Plaintiff**

     Your assessment of the safety risk must be based on reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In making your assessment, you must consider the opinions of consulting expert(s) and Plaintiff's treating physician(s), as well as the experience of Plaintiff in previous similar positions.

**Objection:**

     Defendants object to Plaintiff's proposed instruction no. 28 as irrelevant, because Defendants have not asserted a direct threat defense to Plaintiff's ADA claim.

**Instruction No. 29 – Mixed Motive Analysis**

"**You have heard evidence that the Defendant's treatment of the Plaintiff was motivated by the Plaintiff's sex, race or her disability and also by other lawful reasons.**  If you find that the Plaintiff's sex, race or her disability was a motivating factor in the Defendant's treatment of the Plaintiff, the Plaintiff is entitled to your verdict, even if you find that the Defendant's conduct was also motivated by a lawful reason.

However, if you find that the Defendant's treatment of the Plaintiff was motivated by gender, race or her disability and lawful reasons, you must decide whether the Plaintiff is entitled to damages.  The Plaintiff is entitled to damages unless the Defendant proves by a preponderance of the evidence that the Defendant would have treated Plaintiff similarly even if the Plaintiff's gender, race or her disability had played no role in the employment decision."  Ibid.

**Objection:**

Defendants object to the first sentence of Plaintiff's proposed instruction no. 29, because it requires the Court to state an opinion that the Plaintiff has put on evidence that her treatment by Agere was motivated by her sex, race and/or disability.  Defendants also object because, to the extent a mixed motive instruction is given, it should be offered as an alternative to the pretext analysis at the final stage of the McDonnell Douglas burden-shifting framework.  See Lloyd v. City of Bethlehem, No. 02-CV-00830 (E.D. Pa. Mar. 1, 2004) (Gardner J.)

**Instruction No. 30 – Equal Pay Act – Discrimination**

Ms. Bailey may recover on her Equal Pay Act claim if she can prove by a preponderance of the evidence that Agere paid different wages to male employees for equal work. Equal work means work requiring substantially equal skill, effort and responsibility, under similar working conditions. If you believe the Plaintiff was paid differently for equal work performed, the ultimate burden of proof shifts to Agere to establish that the differential was based on any factor other than Ms. Bailey's sex (gender).

**Thus, in an Equal Pay Act claim, an employer must submit evidence from which you conclude that the reasons offered by Agere actually motivated the disparity in wages**.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 30, because the second paragraph wrongfully states that the burden of proof in an Equal Pay Act claim is on the Defendants. Moreover, the standards for analyzing an Equal Pay Act claim are more clearly and accurately explained by Defendants' supplemental instruction nos. 7 and 8.

**No. 31 – Retaliation**

The Plaintiff contends that the Defendants retaliated against her in violation of her rights under Title VII **and under Section 1981** by **placing her on the performance improvement plan, by transferring her and then** terminating her employment.

In order for the Plaintiff to prevail on her Title VII retaliation claim, you must find that the Defendants discharged her because she engaged in protected conduct, that is, **because she complained about what she reasonably believed to be sex, race or disability discrimination and because she filed discrimination charges.**

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 31 because it misstates the law to be applied in a Title VII retaliation case.  It is not enough that Plaintiff complained about what *she believed* to be race, sex or disability discrimination.  Rather, Plaintiff is required to demonstrate that she complained in such a manner that *Defendants reasonably understood* that she was complaining about race, sex or disability discrimination.  Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir. 1995).  Moreover, proof of a prima facie retaliation case requires proof of three elements – (1) protected employee activity, (2) an adverse employment action, and (3) a causal link existing between the two, Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).  In addition, even if Plaintiff can establish a prima facie case of retaliation, Plaintiff must ultimately prove that Defendants' stated reasons for their actions were a pretext for retaliation.  Id. at 432.  These standards are accurately set forth in Defendants' supplemental instruction nos. 13-15.

Defendants further object to Plaintiff's proposed instruction no. 31 because it inaccurately characterizes her claims in this case.  Plaintiff has not asserted a Section 1981 claim in this case, and she has not claimed that Defendants retaliated against her by placing her on a performance improvement plan or by transferring her.

**No. 32 – Actual Damages**

If you find in favor of the Plaintiff on her claim for race discrimination in violation of Title VII **and/or Section 1981**, then, you **must** award her actual damages. To award her actual damages, you must find by a preponderance of the evidence that the Plaintiff incurred actual damages as a result of the discrimination.

To the extent that actual damages have been proved by the evidence, you shall award as actual damages:

1. The amount of earnings and benefits that the Plaintiff would have received but for the race discrimination; and

2. Any non-economic losses or injuries incurred to the present time, or which probably will be incurred in the future, including inconvenience and emotional distress; and

3. Back pay, interest on back pay and front pay.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 32 because it fails to adequately explain to the jury the nature of the damages they may award. For example, the jury cannot be expected to understand, without explanation, the concepts of back pay and front pay. Moreover, because back pay would include "[t]he amount of earnings and benefits that the Plaintiff would have received but for the race discrimination," the proposed instruction is duplicative and confusing. The standards for awarding particular types of damages in this case are more fully explained in Defendants' supplemental instruction nos. 18-20.

**No. 33 – Damages:  Back Pay**

The fact that I instruct you on the law of damages must not be taken as an indication that you should find for the Plaintiff.  It is for you to decide on the evidence presented and the rules of law I have given you whether the Plaintiff is entitled to recover from the Defendant.  However, if you return a verdict for the Plaintiff, you must then decide the issue of damages.

**The purpose of the Americans with Disabilities Act is to make persons whole for injuries suffered as a result of unlawful employment discrimination.**  Under the Act, the Plaintiff is entitled to recover lost wages and benefits, including increases in wages.  The amount of wages and benefits due is determined by calculating the amount that would have been earned from the date of the termination action to the date you, the jury, return a verdict.  You may include in the amount all forms of compensation the Plaintiff would have earned, including salary, bonuses, vacation pay, pension and health insurance benefits.

Plaintiff is not required to prove with unrealistic precision the amount of lost earnings, if any, due him.  Any uncertainties in the amount Plaintiff would have earned should be resolved against the Defendant.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 33 because it does not clearly explain how the jury should calculate a back pay award in light of the particular claims raised by Plaintiff in this case.  Moreover, the instruction does not provide for offset of wages earned by Plaintiff since her termination, as required.  Defendants believe these standards are more appropriately set forth by Defendants' supplemental instruction no. 19.  Defendants also object to the statement of the ADA's purpose, which is not a factor for the jury to consider when awarding damages.

**No. 34 – Damages:  Front Pay**

If you return a verdict for the Plaintiff, **but you find that Plaintiff cannot be reinstated to the job** because it is no longer available or due to antagonism and disharmony between the Plaintiff and the Defendant, you may award Plaintiff front pay.  Front pay may include the amount Plaintiff would have earned from the day you, the jury, return a verdict, until the date you find Plaintiff's loss of future earning will cease.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 34 because it fails to explain the limitations on an award of front pay, including the jury's discretion not to award such damages or the circumstances under which a front pay award should be discontinued.  These standards are more appropriately explained by Defendant's supplemental instruction no. 19.

**No. 35 – Compensatory Damages**

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the Defendant's violation of the Plaintiff's rights. If you find that the Defendant is liable on the claims, as I have explained them, then you must award the Plaintiff sufficient damages to compensate him for any injury proximately caused by the Defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the Plaintiff whole – that is to compensate her for the damages that she has suffered. Furthermore, compensatory damages are not limited merely to expenses that Plaintiff may have borne. A prevailing Plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that that she has suffered because of a Defendant's conduct.

I remind you that you may award compensatory damages only for injuries that a Plaintiff proves were proximately caused by a Defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries but only for those injuries that a Plaintiff has actually suffered **or which she is reasonably likely to suffer in the near future**.

In awarding compensatory damages, if you decide to award them you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a Plaintiff to prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages drawing

reasonable inferences where you deem appropriate form the facts and circumstances in evidence.

**Objection:**

Defendants object to the portions of Plaintiff's proposed instruction no. 35 that allows the jury to award damages for future pain and suffering.  Defendants also contend that their supplemental instruction no. 21, which is adapted from the Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, is more suitable.

**<u>No. 36 – Equal Pay</u>**

If you should find that Agere has violated Ms. Bailey's statutory rights under the Equal

Pay Act you may award her unpaid wages, plus liquidated damages for a willful violation of the

act.

**<u>Objection</u>:**

Defendants object to Plaintiff's proposed instruction no. 36 because Plaintiff has not
introduced evidence that would establish a willful violation of the Equal Pay Act.  Moreover, the
proposed instruction does not explain what liquidated damages are, on what basis they should be
awarded and, if so, how they should be calculated.  <u>See</u> 29 U.S.C. § 216(b); <u>Starceski v.
Westinghouse Elec. Corp.</u>, 54 F.3d 1089 (3d Cir. 1995).

**No. 37 – Punitive Damages**

If you should find that the Defendant is liable for the Plaintiff's injuries, then you have the discretion to award, in addition to compensatory damages, punitive damages. You may award punitive damages if the Plaintiff proves that the Defendant's conduct was **malicious sand reckless, not merely unreasonable**. **An act is malicious and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences.** The purpose of punitive damages is to punish a Defendant for shocking conduct and to set an example in order to deter him and others from committing similar acts in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at the misconduct.

The awarding of punitive damages is within your discretion – you are not required to award them. If you decide to award punitive damages, you must use sound reason in setting the amount it must not reflect bias, prejudice, or sympathy toward any party. **But the amount can be as large as you believe necessary to fulfill the purpose of punitive damages.** In this regard, you may consider the financial resources of the Defendant in fixing the amount of punitive damages.

This standard applies to claims under Title VII and § 1981.

**Objection:**

Defendants object to Plaintiff's proposed instruction no. 37 because it misstates the standards to be applied in determining whether punitive damages should be awarded. In order to recover punitive damages, Plaintiff must demonstrate that Defendants acted with reckless indifference to her federally protected rights. Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999). Defendants' supplemental instruction no. 22 properly sets forth this standard and how it should be applied.

**No. 38 – Awarding Damages**

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount. You should use your best judgment, based on the evidence.

**Objection:**

Defendants object to Plaintiff's proposed instruction No. 38, because it is contrary to the Ms. Bailey may recover only *actual damages*. Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108 3d Cir. 1988). Ms. Bailey bears the burden of proving the damages she claims she suffered. These standards are set forth and supported in Defendants' supplemental instruction no. 17.

Respectfully submitted,

/s/ Theodore A. Schroeder＿＿＿
Robert W. Cameron
PA I.D. No. 69059
Theodore A. Schroeder
PA I.D. No. 80559
LITTLER MENDELSON, P.C.
Dominion Tower
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
Tel: (412) 201-7600

Attorneys for Defendants

Dated: March 12, 2004

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 12th day of March 2004, a true and correct copy of the foregoing

Defendants' Objections to Plaintiff's Requested Jury Instructions was caused to be served via

Federal Express upon the following:

> Glennis L. Clark, Esquire
> 1908 W. Allen Street
> Allentown, PA  18104

<u>/s/ Theodore A. Schroeder</u>
