IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARNELL BAILEY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 02-4683 |
| | ) |
| v. | ) Judge James Knoll Gardner |
| | ) |
| LUCENT TECHNOLOGIES INC. and | ) |
| AGERE SYSTEMS INC., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Lucent Technologies Inc. ("Lucent") and Agere Systems Inc. ("Agere"), through their undersigned counsel and pursuant to Rule 50 of the Federal Rules of Civil Procedure, file this Motion for Judgment as a Matter of Law. In support of this Motion, Defendants state the following.

1.  Plaintiff Garnell Bailey ("Bailey") claims that Agere discriminated against her based on her sex with respect to both the salary it paid her and the amount of discretionary stock options she was granted as part of Agere's initial public offering. Bailey also claims that Agere terminated because of her sex and because she filed a charge of sex discrimination with the EEOC.

2.  The parties have now introduced their evidence and the case has yet to be submitted to the jury. Defendants are entitled to judgment as a matter of law on Bailey's claims, because "there is no legally sufficient evidentiary basis for a reasonable jury to find for" her on any of her claims. Rule 50(a).

3.  The law and the facts on which Defendants Motion is based are set forth in the Memorandum of Law that follows, which is incorporated herein by reference.

WHEREFORE, Defendants respectfully requests that the Court grant them judgment as a

matter of law and dismiss Bailey's Amended Complaint with prejudice.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

**I.      Introduction**

Plaintiff Garnell Bailey ("Bailey") filed a two-count Amended Complaint against Defendants alleging that Defendants discriminated against her with respect to her compensation based on her race, sex and disability and in retaliation for filing a charge of discrimination. By order dated March 18, 2004, this Court granted Defendants summary judgment on Bailey's disability discrimination claim, and dismissed that portion of her claim. Prior to the commencement of trial in this matter, Bailey voluntarily withdrew her race discrimination claim. As set forth herein, the evidence introduced at trial, viewed in the light most favorable to Bailey fails to establish that Agere discriminated against Bailey based on her sex or retaliated against her for complaining about discrimination. Therefore, Defendants' Motion for Judgment as a Matter of Law should be granted.

**II.     Rule 50(a) Standards**

Rule 50(a)(2) of the Federal Rules of Civil Procedure permits a motion for judgment as a to be made "at any time before submission of the case to the jury." Judgment as a matter of law, pursuant to 50, is appropriate only where there is insufficient evidence from which a jury could reasonably find for the plaintiff. Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). In making the determination to grant judgment as a matter of law, the court must find that as a matter of law, "the record is critically deficient of the minimum quantity of evidence from which the jury might reasonably afford relief." Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1034 (3d Cir. 1988). The plaintiff is entitled to the benefit of all reasonable inferences that can be drawn from the evidence in order to determine that there is any rational basis to find a verdict for the plaintiff. Bhaya v. Westinghouse Elec. Co., 832 F.2d 258, 259 (3d Cir. 1987).

III.     **Argument**

Agere is entitled to judgment as a matter of law on all of Bailey's claims. Agere compensated and provided stock options to Bailey based on legitimate, non-discriminatory business considerations. Agere terminated Bailey because she threatened Pennington; there is no evidence that the termination decision was based on any discriminatory or retaliatory animus.

A.     **Agere is Entitled to Summary Judgment on Bailey's Sex Discrimination Claims**

Bailey has not proved her claims that Agere discriminated against her based on her sex with respect to her salary and stock options. Similarly, Bailey has not proved that Agere terminated her because or her sex.

Bailey's sex discrimination claims "require application of the familiar burden-shifting framework of the Supreme Court articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 729, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973)." Jones v. School Dist., 198 F.3d 403, 410 (3d Cir. 1999). Under this three-stage analysis:

> First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Id. (quotation omitted).[1]

Bailey's sex discrimination claims fail as a matter of law. Specifically: (1) Bailey cannot establish a *prima facie* case of unequal pay, because she was not performing equal work to the male individuals to whom she compares herself; (2) Bailey received an appropriate amount of stock options given her position; and (3) Bailey was terminated because she made threats to kill

---

[1] Bailey's sex discrimination claims under the Pennsylvania Human Relations Act ("PHRA") are subject to the same analysis as her Title VII claims. Knabe v. Boury Corp., 115 F.3d 407, 410 n.5 (3d Cir. 1997).

or otherwise harm her supervisor, Kevin Pennington, (Pl. Ex. 13), and there is no evidence that this decision was a pretext for discrimination;.

### 1.     Bailey's compensation was not based on her sex.

Bailey claims that she was compensated differently when compared to her male counterparts such as Paul Dumas, Michael Henrici, John O'Donnell and Russell Diehl and that these compensation decisions amounted to discrimination under Title VII and the Equal Pay Act ("EPA").  The compensation of these individuals, however, is not evidence of sex discrimination.

Bailey's equal pay claims under the EPA and Title VII fail because she has not introduced evidence that Agere paid her less than men who were performing similar work. Because a violation of the EPA constitutes a violation of Title VII, a *prima facie* showing of an EPA claim and of a Title VII violation based on unequal pay are the same.  Miller v. Beneficial Management Corp., 977 F.2d 834, 846 (3d Cir. 1992).  To establish a *prima facie* case of discriminatory compensation under the EPA and Title VII, Bailey must prove that Agere pays different wages to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions."  Byrnes v. Herion, Inc., 764 F. Supp. 1026, 1030 (W.D. Pa. 1991) (citing Angelo v. Bacharach Instrument Co., 555 F.2d 1164 (3d Cir. 1977), quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).

The EPA affords relief only when males and females are paid different wages for *equal work*.  Mere comparability of positions is not sufficient to give rise to an inference that the positions at issue are "equal" as that term is used in the EPA.  Angelo, 555 F.2d at 1176. "Failure to furnish equal pay for 'comparable work' or 'like jobs' is not cognizable under the Act."  Welde v. Tetley, Inc., 864 F. Supp. 440, 442 (M.D. Pa. 1994) (citing Nulf v. International Paper Co., 656 F.2d 553, 560 (10th Cir. 1981)).  To satisfy her burden of proving the "equal

4

work" component of her EPA claim, Bailey must establish that her job and the jobs to which she compares it have a "common core" of tasks, *i.e.*, that "a significant portion of the jobs is identical." Byrnes, 764 F. Supp. at 1030 (citing Brobst v. Columbus Servs. Int'l, 761 F.2d 148 (3d Cir. 1985)).

Bailey's equal pay claims fail as a matter of law because she has not demonstrated that the jobs of Dumas, Henrici, O'Donnell and Diehl shared a common core of tasks with hers. Bailey bases her claim that she was entitled to the same pay as these men on the general proposition that they all held the job classification of Director in the Human Resources department, but the inquiry does not stop there. It is not the job title, but the actual tasks involved in each job, that determine whether they are comparable. Angelo, 555 F.2d at 1171.

There is no evidence that Bailey's job as Director of Diversity and Business Ethics shared a common core of tasks with the jobs of Dumas, Henrici, O'Donnell and Diehl. Bailey was unable to testify or introduce other evidence regarding the job duties of Henrici, O'Donnell or Diehl, after he was promoted to Director, because she went out on disability. Indeed, Kevin Pennington testified that each of these individuals had a greater scope of responsibility and supervised more employees than Bailey did. (See also Def. Exs. 9-12).

As for Dumas, Bailey testified that she *could have* performed *some* of the duties he performed, not that she *did* perform the same duties. The test for equal pay, however, is not equal ability, but equal work. Angelo, 555 F.2d at 1171. In the end, Bailey's claim is that she was not paid the same as other Directors in the Human Resources department. Title, however, is not the controlling factor in an equal pay analysis. Id. at 1176. Even if it were. the evidence introduced showed that there was a male human resources Director (Theo Bell) paid less than Bailey and a female (Patricia Schuster) who was paid more. (Def. Exs. 1, 71, 72). Therefore, Bailey's EPA and Title VII compensation claims must fail.

5

### 2. Bailey's grant of stock options was non-discriminatory.

There is no evidence that Agere discriminated against Bailey during the IPO discretionary stock option grant of March 2001. Simply put, although Bailey claims that she should have received more options, she does not explain how she was treated less favorably than similarly situated males. Indeed, Pennington testified without contradiction that he thought Bailey was a senior manager when the stock option grant was made. It also is undisputed that, with a grant of 30,000 options, Pennington actually granted her an amount above the recommended guidelines. (Def. Ex. 14)

### 3. Agere terminated Bailey for making threats of violence toward Pennington.

There is no dispute that Pennington decided to terminate Bailey because she had made threats of violence toward him. (Pl. Ex. 13). It is beyond cavil that threats of violence toward a co-worker are a legitimate, non-discriminatory reason for discharging an employee. Davis v. City of Philadelphia Water Dep't, 57 Fed. Appx. 90, 2003 WL 236246 (3d Cir. Jan. 30, 2003) (rejecting race discrimination claim because employee was legitimately terminated for making death threats); Phillips v. Union Pac. R.R., 216 F.3d 703, 706 (8th Cir. 2000) (holding in context of Title VII race discrimination claim that threatening a co-worker with bodily harm was non-discriminatory reason for suspension); Jones v. American Postal Workers Union Nat'l, 192 F.3d 417, 429 (4th Cir.1999) (holding that employer was entitled to discharge employee after he threatened life of his supervisor, even if such misconduct was caused by employee's disability); Dose v. Buena Vista Univ., 229 F. Supp. 910, 916, 926 (N.D. Iowa 2002) (employee's statement that supervisor "should wear a bullet proof vest" was legitimate, non-discriminatory reason for discharge entitling employer to summary judgment on disability discrimination claim); Hugley v. Art Institute of Chicago, 3 F. Supp.2d 900, 902, 909 (N.D. Ill. 1998) (granting summary judgment to employer in race discrimination claim brought by employee who was terminated for threatening to "bust a cap" (shoot) a fellow employee).

Here, Bailey admitted that she told Susan Lovegrove-Geise and Patricia Gordy that she had bought a gun. Although there is some dispute between Bailey and both Lovegrove-Geise and Gordy regarding the exact content of her statements regarding the gun, a central fact is undisputed: both Lovegrove-Geise and Gordy – in their professional judgment – believed that they had a duty to warn regarding Bailey's threat toward Pennington. Moreover, it is undisputed that Bailey's threat to Lovegrove-Geise was the reason Agere terminated her. Kevin Pennington, who made the decision to terminate Bailey, testified that this was the reason for his decision. (See also Pl. Ex. 13). Thus, the termination decision was completely unrelated to Bailey's sex.

During her testimony, Bailey stated that she never really intended harm to Pennington and suggested that Agere overreacted to her threats. While Agere disagrees with these conclusions, Bailey's contentions "miss the point." See Hugley, 3 F. Supp.2d at 907. In response to similar allegations that an employer had improperly investigated alleged threats of harm, the Hugley court recognized that these considerations are irrelevant to the discrimination determination:

> The issue here is not the adequacy of the [security director's] investigation, the sufficiency of the evidence before the grievance committee, or even whether the threat actually occurred. It is not appropriate for this Court to evaluate the investigations and hearings surrounding Hugley's termination because we do not sit as a super-personnel department that re-examines an entity's business decisions. Nor is our role to determine if Hugley was treated fairly … unless he can show treatment different from others outside the protected class.

Id. (citations and quotations omitted). The Third Circuit has recognized the same general principle. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995) ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, … our inquiry is limited to whether the employer gave

7

an honest explanation of its behavior.").[2]

As these cases make clear, whether or not Lovegrove-Geise or Pennington reacted appropriately to Bailey's threats – or even whether Bailey was threatening Pennington at all – are issues that have no relevance to Bailey's discrimination claims.[3]  Because Agere terminated Bailey for making threats against Pennington, her race and sex discrimination claims based on her termination must fail.

Bailey has introduced evidence suggesting that she was treated differently than Dewayne Rideout, a male, who she alleges had threatened co-workers Matt Riley ("Riley") and Dennis Hill ("Hill").  In order to properly compare herself to Rideout, however, Bailey must show "that [Rideout's] acts were of 'comparable seriousness' to her own infraction."  See Anderson v. Haverford College, 868 F. Supp. 741, 745 (E.D. Pa. 1994).  To make such a showing, Bailey must demonstrate that Rideout "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  See id.  Rideout's case is clearly distinguishable.  Hill testified that he never felt threatened by Rideout and that he had no knowledge that Rideout owned, purchased or possessed a gun.  Rideout also testified that he did not threaten Hill, calling such action "the cardinal sin of a HR leader."

The comparison here is similar to that in Phillips, 216 F.3d at 706.  There, an employee who was terminated for threatening a co-worker with bodily harm tried to compare herself to

---

[2] Although Brewer was decided under the Age Discrimination in Employment Act, the logic is equally applicable under Title VII, since the two statutes are analyzed using the same McDonnell Douglas burden-shifting framework.  Brewer, 72 F.3d at 330.
[3] Therefore, it is irrelevant that Bailey denies that she told Lovegrove-Geise that she could not guarantee that she would not harm Pennington.  (Bailey Dep. at 138).  All that matters is Lovegrove-Geise's testimony that she honestly believed that Bailey posed a threat and that she had a professional duty to warn Pennington.

another employee who she claimed had engaged in similar conduct. The Eighth Circuit rejected the comparison because the other employee's conduct did not involve death threats or cause the company to fear that he might intentionally harm a co-worker. See id. For similar reasons, Rideout is not similarly situated to Bailey. Unlike Bailey, who indicated she had a gun and caused the company to fear that she seriously intended to harm Pennington, Rideout's conduct amounted to disagreements in meetings with co-workers, neither of whom ever felt threatened by him. Unlike with Bailey, Agere never believed that Rideout intended to harm any Agere employee, and his treatment has no bearing on Bailey's sex discrimination claim. See also Davis, 2003 WL 236246, *2 (terminated black employee who made death threats could not compare himself to white employees who engaged in short-lived flare-ups during disagreements with other employees). Indeed, Riley testified that he never reported Rideout's statements to his supervisors or to Agere security.

      The other alleged threats that Bailey introduced through the testimony of Edgar Tanner do not establish Bailey was terminated because of her sex. Tanner testified that his experience was that these issues were dealt with on a case-by-case basis based on the discretion of the supervisor involved. Because each supervisor made different decisions, that fact that supervisors who had no role in Bailey's terminations took different actions than Pennington took in the case of Bailey is not probative of sex discrimination. Similarly, Bailey's comparison of herself to bargaining unit employees is not probative because the Company was required to deal with the Union and the Union contract when disciplining bargaining unit employees. Tanner's testimony regarding Greg Hehn – who allegedly threatened to blow up the chairman's car – is illustrative. Tanner testified that Hehn's supervisor, Kevin Campbell, wanted him terminated because of the threat, just as Pennington terminated Bailey. To resolve issues raised by the Union, however, Campbell agreed to allow Hehn to receive certain collectively-bargained benefits. The difference in the treatment of Hehn and Bailey is not their sex, but that Hehn was a union

9

member and Bailey was not.

In sum, Bailey was terminated because she threatened Pennington.  There is no dispute that Agere took the threat seriously and that the threat alone was the reason for Bailey's termination.  Therefore, Agere is entitled to judgment as a matter of law on Bailey's sex discrimination claim related to her termination.

**B.      Agere is Entitled to Summary Judgment on Bailey's Retaliation Claim.**

Bailey claims that Agere terminated her because she had filed a charge of discrimination with the EEOC.  In order to establish a *prima facie* case of retaliation, Bailey must show: "(1) that . . . she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).  Bailey's retaliation claim fails as a matter of law because she introduced no evidence that she engaged in protected employee activity.  For example, Bailey did not introduce evidence that she filed a charge of discrimination with the EEOC and her complaint to Pennington did not reference sex discrimination.  (Pl. Ex. 59).

In addition, Bailey has not established a causal link between any protected activity and her termination.  As set forth in detail above, it is undisputed that Agere terminated Bailey because of her threats toward Pennington.  (Pl. Ex. 13).  Therefore, Bailey cannot establish the causal link necessary to support her retaliation claim.

Bailey's retaliation claim also fails because she cannot show that the decision to terminate her was a pretext for unlawful retaliation.  The burden-shifting analysis applicable to Bailey's race and sex discrimination claim also applies to her retaliation claim.  Weston, 251 F.3d at 431.  As with her discrimination claims, Bailey cannot establish that the decision to terminate her for threatening Pennington was a pretext for retaliation, and Agere is entitled to summary judgment on that claim.

10

**IV.**     **Conclusion**

For the foregoing reasons, this Court should grant Defendants' Motion for Judgment as a Matter of Law and dismiss Bailey's Amended Complaint with prejudice.

                                        Respectfully submitted,

                                        /s/ Theodore A. Schroeder
Robert W. Cameron  (Pa. I.D. No. 69059)
Theodore A. Schroeder  (Pa. I.D. No. 80559)
LITTLER MENDELSON, P.C.
Dominion Tower
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
Tel:  (412) 201-7600

Attorneys for Defendants,
Lucent Technologies Inc. and Agere Systems Inc.

Dated:  October 12, 2004

# CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2004, a true and correct copy of the foregoing **Defendants' Motion for Judgment as a Matter of Law** and **Memorandum of Law in Support of Defendants' Motion for Judgment as a Matter of Law** was served by hand delivery on the following counsel of record:

> Glennis L. Clark, Esquire
> 1908 West Allen Street
> Allentown, PA  18104


/s/ Theodore A. Schroeder

Pittsburgh:41814.1 042480.1004